LYMAN BOYNTON & another *vs.* LYNN GAS LIGHT COMPANY

Suffolk. Nov. 13, 1877. — March 5, 1878. COLT & AMES, JJ., absent.

A. made an agreement in writing with a corporation, under seal, to build, for a round sum, a wharf with a wall of certain dimensions, and to dredge a dock, basin and channel of a certain depth. The agreement then provided that " any addition to the wall " should be paid for at a certain rate per running foot, and additional dredging at a certain rate per cubic yard. Then followed the clause that all the materials taken from the dock, basin and channel were to be disposed of by A. " within the area of the wall " to a certain height, and any surplus of such material in one of several designated places, at the option of the corporation. The corporation's superintendent, who had charge of the work, requested A. to extend the wharf, which A. did, and there was evidence that the superintendent agreed to pay a certain sum for the additional filling. *Held,* that the provision for the deposit of excavated material extended to the enlarged as well as to the original wharf; and that, if the superintendent made a new contract, it was one which, in the absence of special authority, was not within the scope of his agency; and that the corporation was not liable therefor, although it accepted the work.

CONTRACT on an account annexed for work and labor. At the trial in the Superior Court, before *Aldrich,* J., it appeared that on July 28, 1870, the plaintiffs, as the parties of the first part, and the defendant, acting by its president, as the party of the second part, entered into the following agreement under seal :

" The said parties of the first part, for the consideration hereinafter mentioned, agree to provide the material for, and forthwith to commence and complete without delay or intermission, except from the necessities of the weather, a substantial stone wharf, to be located upon the harbor commissioners' line, on the harbor side of land owned by said gas light company, at the foot of Shepard Street, in Lynn, there to measure in length two hundred feet; and, upon a dock hereinafter described, there to measure in length three hundred and fifty feet, the wall of said wharf to be twelve feet in thickness at the bottom, four feet at the top, and nineteen feet in height, built in a substantial and workmanlike manner, and in accordance with the following specifications. [Then followed the specifications, with a provision that certain " headers," of a specified size, were " to be distributed throughout the wall, at the discretion of the superintendent of said gas light company, for the purpose of binding the same

securely together," " the front of the wall to be battened two feet and four inches, protected by oak pile fenders, not less than one foot in diameter, placed not more than ten feet apart, driven to hard bottom, and secured to the cap-stones by wrought-iron staples, in the usual manner, and furnished with seven oak belaying posts, not less than sixteen inches in diameter, driven to hard bottom, at such places in the wharf as the superintendent shall determine."]

" Also, in addition to the excavation necessary for the above-mentioned wall, to dredge a dock, on the easterly side thereof, and a basin, on the southerly side, — both to have a uniform depth of six feet, at mean low-water, at all points within seventy-five feet of the face of the wall; and a channel from, and in continuation of said dock, in a direct line to the nearest deep water, the same to be at least forty feet wide at the bottom, to slope at the sides, at an angle of not less than sixty degrees from a perpendicular, and to maintain the same uniform depth of six feet, at mean low-water, throughout its entire length. Any addition to the wall above named, to be paid for at the rate of twenty-four dollars for each running foot, and additional dredging at the rate of sixty cents per cubic yard.

" All the materials taken from the dock, basin and channel to be disposed of by said party of the first part, as follows, namely : To be deposited within the area enclosed by the wall above mentioned, — the line of the marsh, on the north, — and a line running from the westerly end of the wall, parallel with the longest side thereof, until the middle point of the area shall be twenty inches above the level of the cap-stones of the wharf, and of a uniform grade. The surplus, if any, to be deposited on the easterly and westerly sides of the dock, upon the flats belonging to the company, inside the harbor commissioners' line, or upon the adjoining marsh, at the option of the company. It being understood and agreed that, after the filling in, and completion of the wharf, and the disposal of material as above specified, any sur plus which the company may require to be raised and deposited upon said wharf, shall be paid for at the rate of twenty cents per cubic yard additional.

" And the said party of the first part further agrees to give bonds in the sum of fifteen thousand dollars, with good and suffi·

cient sureties for the full and faithful performance of the above contract, in all its parts.

" And the said party of the second part promises and agrees, in consideration of the fulfilment of the above written contract, to pay to the said party of the first part the sum of thirty-eight thousand two hundred and twenty-five dollars, in the manner following. [Then followed a clause as to the mode of payment.]

It appeared that the plaintiffs built the wall and did the other work specified in the above agreement ; and also built an additional wall, did some extra dredging, and, with the material so dredged, filled in the wharf made by the additional wall. For this work they charged the prices named in the agreement for the building and dredging, and, for the filling, twenty cents a yard. This last item was the only one in dispute.

The plaintiffs introduced evidence tending to show that, when the work on the original wall was nearly completed, one Mace, the superintendent referred to in the agreement, and who had charge of the work, came to Lyman Boynton, one of the plaintiffs, and wanted him to extend the wharf ; that Boynton said to him that if the defendant proposed to extend the wall further in-shore and do the filling behind it, it would be very expensive, compared with the rest of the work, and that they should want more pay for doing it, in addition to what they were getting ; that Mace said the defendant must have it done, and would want to fill as far as the wall was built ; that he told Mace it would cost considerably more to do it than it would the other, and they must have more ; that Mace seemed to think that twenty cents a yard would be enough for it, the same as raising the material for the wharf, if there was a surplus, and that was all the defendant would pay for the additional filling ; and that he told Mace he wanted forty cents ; that Mace said the wall and dredging were covered by the contract ; that he told Mace they would do the wall and dredging at the price named in the contract, and that it was worth forty cents to do the filling ; that Mace said he would only pay twenty, and the plaintiffs agreed to do it for that, and went on and did it, in pursuance of this agreement.

There was evidence that the filling of the enlarged part of the wharf was necessary for its proper construction, and that the defendant accepted the work done.

It being admitted that the whole of the disputed item was due if any part of it was, the plaintiff contended that the defendant was liable, under the verbal agreement, upon the evidence, either for the agreed price of twenty cents, if the jury found that Mace was authorized to make such a bargain, or upon a *quantum meruit;* that, if there was a verbal contract made after the written agreement, and entirely covering the extended wall, the additional dredging and filling of the wharf, with a separate price for each item, and the defendant adopted and paid the price of the wall and dredging, it adopted also the filling, and that, by adopting, accepting and approving of the additional work, it adopted the price and contract for it; and that the defendant could not adopt a part and reject a part. There was no evidence, except as herein reported, to show that the corporation or any of its officers knew that Mace had assumed to modify, alter or rescind the written contract, or that he had made, if he did make, any such agreement, as the plaintiffs contended, for the additional filling.

The judge ruled that the wharf specified in the original contract embraced not only the wharf three hundred and fifty feet long, but also the extension; that while, by the terms of the agreement, the plaintiffs could not be required to build the extension and do the additional dredging, yet, if they elected to proceed under that contract and build the additional wall and do the additional dredging, they would also be required to fill the extended wharf with the material dredged from the dock and basin, so far as was necessary to complete the filling, and that for this they were not entitled to compensation in addition to the price named in the written contract; and that the whole compensation for extending the wharf was provided for and included in the prices named in the contract; that there was no sufficient evidence to authorize the jury to find that Mace had any authority to rescind, modify or alter the written contract; and that, as the plaintiffs had elected to extend the wall and do the additional dredging at the request of the defendant's agent, he at the same time claiming and saying to the plaintiffs that the compensation for the same was provided for in the written contract, the plaintiffs were bound by the same contract to do the filling; that the defendant's rights could not be affected by

its agent's misunderstanding of the terms of the contract, even if he did suppose that the price of the additional filling was not provided for in the written contract, and, under such misapprehension, had, without authority, stipulated for the payment of the additional twenty cents for the filling. The judge then directed a verdict for the plaintiffs for the amount admitted to be due; and the plaintiffs alleged exceptions.

*A. A. Ranney*, for the plaintiffs.

*W. Gaston & A. Jones*, for the defendant.

LORD, J. Two questions are, in this case, presented for our decision: First. Did the presiding judge construe correctly the written contract between the parties? Second. Was his ruling right, relative to the claim that there was, between the parties, a parol contract in addition to the written? We can have no doubt upon either proposition.

The plaintiffs contracted with the defendant to build a substantial stone wharf. When the contract was executed, it was agreed between the parties that the line of the wharf upon land of the defendant was to measure in length two hundred feet; and the length of line of the wall upon a dock named in the contract was to be three hundred and fifty feet. The plaintiffs further agreed to dredge a dock and a basin, both to be of a certain depth at mean low-water, and a channel from and in continuation of the dock in a direct line to the nearest deep water.

The contract then provided for the mode in which the plaintiffs should dispose of the material taken from the dock, basin and channel by the dredging, the most important of which was that it should be deposited "within the area of the wall above mentioned" "until the middle point of said area shall be twenty inches above the level of the cap-stone of the wharf, and of a uniform grade." It was then further provided that if, after such filling of the wharf, there should be a surplus of material, it should be deposited by the plaintiffs in one of several designated places at the option of the defendant. For this work thus described, the defendant agreed to pay to the plaintiffs the sum of $38,225, in the mode prescribed by the contract.

It will be observed that the price is a gross price for the whole work, including building of wall, excavation and filling. What price per running foot for building the wall and what price per

cubic yard for dredging the parties deemed reasonable we do not know, nor is it material to inquire. It is certain that, by the use of the word "dredging," it was understood by the parties that the plaintiffs were to dispose of the materials obtained by dredging. Indeed, the use of the word "dredging" implies this; the party dredging must in some proper mode dispose of the materials. Ordinarily, the contract designates the mode; but, whether so or not, it does in this case.

The contract, however, contains this provision: "Any addition to the wall above named to be paid for at the rate of twenty-four dollars for each running foot, and additional dredging at the rate of sixty cents per cubic yard." The disagreement between the parties arises upon this clause. The plaintiffs say that this clause provides only for building the wall and the dredging, and that it does not provide for the disposition of the materials dredged; and that, inasmuch as the defendant required the materials to be placed within the walls of the wharf thus extended, and as it was a more expensive mode of disposing of the same, they are entitled to recover. The defendant contends that the disposition of the materials is implied in the contract to dredge, and that this clause of the contract is simply an agreement to do additional work of the same nature as that required in the contract, and in the same mode and subject to the same restriction and qualification as the original work, and that it provides for the possible contingency of building a larger wharf than was described in the contract.

Whether it was optional with the plaintiffs to build the enlarged wharf by extending the walls, or whether they were bound by their contract to do so, if required by the defendant, it is immaterial to inquire, for the work has been done, and done upon the terms provided for in the contract, and there is no disagreement between the parties as to the price; they agree, and properly agree, that the price is provided for by the contract, to wit, twenty-four dollars per running foot for the wall, and sixty cents per cubic yard for the dredging; and the real question is whether, under that contract, or as this work was done, the defendant is liable to the plaintiffs to pay anything for the labor of depositing the materials produced by dredging within the walls of the wharf; and we can have no doubt that it is not thus lia-

ble under the written contract.  As before seen, the agreement
to dredge, of its own force, implies the deposit of the materials
dredged in some proper place ; and, the parties having agreed by
the contract where the materials were to be deposited, that
agreement must apply to all the materials dredged under the
contract.  It will be observed that the lines of the wharf as
originally designed were first described in the contract, and, after
that, the provisional arrangement for enlarging the wharf, by
extending the length of lines of wall, was inserted ; so that the
parties had come to an agreement as to price for building the
wharf, whether it should be the original or the enlarged wharf.

The contract having thus provided for building the wharf,
either according to the original line of wall or according to the
extended line, it provides, in the paragraph immediately succeed-
ing, for the disposition of the materials.

There can be no doubt that this dredging was to be done
under the general provisions of the contract; by those provisions,
all the materials obtained by dredging were to be put within the
area inclosed by the walls of the wharf, until such area was filled
to the prescribed height.  Until that time, there was no surplus
to be disposed of, and, after that time, such surplus was to be
disposed of in certain prescribed places, under the direction of
the defendant.

If we could imagine any other possible construction of the
contract, we do not see how the plaintiffs could recover of the
defendant compensation for depositing the materials anywhere,
unless under and by virtue of some new agreement between the
parties ; for it was their duty to deposit them somewhere, and if
the defendant had not the right to require them to be deposited
as they were, they certainly might request the plaintiffs to de-
posit them there without giving them a right to compensation.
It does not appear that the plaintiffs had any right to dispose of
them elsewhere, or to deposit them except where the defendant
consented to their deposit.  Indeed, the only claim made by the
plaintiffs is that they were authorized to deposit them in another
place named in the contract, thereby by implication admitting
that the terms of the contract provided for the disposition of the
materials derived from this particular dredging.  It is, however,
only a surplus, after the filling of the area of the wharf, which

is thus provided for, and that wharf is the wharf which the contract provides for building, whether as inclosed by the walls as at first contemplated, or by the extended walls which the contract provides for.

The only other question therefore is, Did the parties enter into any new contract? It is not contended that the corporation, as such, made any new agreement. The claim is that the defendant's superintendent made such agreement. On this point it becomes necessary to examine the evidence. We find that the superintendent wanted the plaintiffs to extend the wharf. The plaintiffs told the superintendent that, if they did that, they should want more pay. Both the superintendent and the plaintiffs understood that, for such extension of the wharf, the necessary dredging and building of the wall were provided for by the terms of the contract, and the plaintiffs, on being asked why they should require more pay, made no claim for any compensation for erecting the wall or doing the necessary dredging, other than was provided for by the contract, but said that they should require more pay on account of the filling, and said that they wanted forty cents for the filling, and the superintendent said that twenty cents was enough, and the corporation would pay that.

If this had taken place between the defendant and the plaintiffs, it perhaps would have been an additional contract, for which the defendant would have been responsible, although made under a misapprehension of the rights of the parties, and by reason of a misconstruction of the terms of the contract. But it was not done by the defendant. By its president, and under its corporate seal, it had made a contract, and there is no evidence that the corporation ever made or authorized any agent to make any modification of the contract as it had made it, or to make any other contract upon the subject matter embraced within the contract as made by itself. Supposing, therefore, the superintendent to have made a contract binding upon himself personally, there is no evidence of any authority in him to bind the corporation, and it is not within the general scope of the authority of an agent of a corporation to alter, vary or enlarge contracts made by the corporation under its corporate seal.

*Exceptions overruled.*