# COURT OF COMMON PLEAS OF BALTIMORE CITY

Filed March 1, 1900.

WILLIAM C. MERRITT

VS.

THE PENINSULAR CONSTRUCTION COMPANY.

*J. Markham Marshall* and *Howard Bryant* for the plaintiff.

*Archibald H. Taylor* and *William L. Marbury* for the defendant.

WRIGHT, J.—

At the conclusion of the plaintiff's case the defendant, through its counsel, offered certain motions to strike out testimony taken subject to exception, also one prayer.

The Court, WRIGHT, J., having heard full argument on said motions and prayer, delivered the following oral opinion:

In approaching the questions discussed in this case we must, I think, do so fully appreciating the fact that the parties to this suit had entered into a contract, under seal, of such a character that we must feel satisfied beyond any doubt that it was intended to comprise all the terms thought necessary or proper to fully provide for the work to be done; and if a parol contract is set up as having been subsequently made, that varies to any extent the sealed contract previously entered into, the terms of that parol contract should be very definitely ascertained, and, also, we should be satisfied that the evidence of authority given to the agent, or the subsequent ratification by the principal, should be legally sufficient to establish the same.

Passing by the question as to whether or not the language alleged to have been used purported to make a present contract, or an agreement to have a future contract made by his principal, the first and main question to be decided is, is there evidence of a parol contract between the plaintiff and the defendant company in relation to furnishing money in advance to the plaintiff to purchase material, etc., such as would modify or change the terms of the original contract under seal in regard to changing the time and mode of payments to the plaintiff for his work?

Should I hold that there was not such a contract most of the other questions argued before me will not require a decision.

There is, I am fully satisfied, no evidence legally sufficient to justify the contention that Bosley, the general manager, had any antecedent authority to make such a contract. The general expressions of one or more of the witnesses as to his attending to *all* the business of the company cannot be construed to mean, literally, that he did anything of the kind, in the face of the fact, brought out by the plaintiff's evidence, that there were other officers of the company actually engaged in attending to the business of the company.

Under all the evidence he was a general manager, and there is no legally sufficient evidence that he was authorized to do any other act than such as general managers are generally authorized to perform. In order to show any other or greater authority or power there must be shown the character and the nature of the acts he has been allowed to perform, and, also, that they have been performed for such a length of time as to justify the conclusion of acquiescence by the board of directors or other governing body, otherwise the powers must be exercised as granted. Western Railroad Company vs. Bayne, 11 Hun. 166, 167.

As said in Boynton vs. Lynn Gas Light Co., 124 Mass. 197: "The corporation, by its president and under its corporate seal, had made a contract, and there is no evidence that the corporation ever made or authorized any agent to make any modification of the contract as it had made it, or to make any other contract upon the subject-matter embraced within the contract as made by itself * * *. It is not within the general scope of the authority of an agent of a corporation to alter, vary or enlarge contracts made by the corporation under its corporate seal."

This language was used in relation to a superintendent who had entire charge of the work done under the contract there under consideration by the Court.

It is true that general agents, general managers, or managing agents, by whatever name they may be called, possess ample power to bind the corporation by acts and contracts done in the course of their ordinary business. 4 Thompson on Corporations, Sec. 4650.

But was this alleged oral agreement made by Bosley, made in the course of the ordinary business of the corporation? If not, unless there has been shown a subsequent ratification, (there being no evidence of an express authority, and no evidence, as far as I can see, that Bosley was held out as having authority to perform such acts and exercise such powers sufficiently long

to justify the conclusion of acquiescence by the board of directors or other governing body), the defendant company cannot be held bound by this alleged parol agreement.

This alleged contract is one alleged to have been made that varies, and varies upon a very material point, the contract formally entered into by the defendant company, under its corporate seal, and this plaintiff. And for what purpose? To induce the plaintiff to subscribe to an additional loan to complete another portion of the road, that the plaintiff, under his written contract with the defendant, had nothing to do with. According to the plaintiff's brief, for the purpose of extending their line from Denton to Rehoboth. It may have been, as testified to by Hubbell, that the bonds of the company would be .worthless unless that extension should be made. Still, I do not see how the alleged terms of Merritt's subscription would materially help that object.

For Hubbell further testifies Mr. Merritt "signed under the condition that his subscription was to be paid by any balance that was due him." And later on he said Merritt's subscription was to be paid "out of what became due to him for the work he was doing." I mention that evidence for the purpose of showing that such a transaction was not one within the ordinary course of the business of the corporation, but was one that could not be said to be very beneficial to the interests of the corporation. The defendant was to get nothing but a subscription to an object they wanted to carry out, without that subscription furnishing one cent to that object, unless at the termination of the work Merritt should be successful enough to have a balance due him large enough to pay his subscription.

Has there been any subsequent ratification of this alleged parol contract? The principles governing ratification are clearly laid down in Meechem on Agents, Sec. 129, and it refers to individuals as well as corporations. He says: "Any ratification of an unauthorized contract, in order to be made effectual and obligatory upon the alleged principal, must be shown to have been made by him with a full knowledge of all the material facts connected with the transaction to which it relates, and especially must it appear that the existence of the contract and its nature and consideration were known to him."

The alleged contract being, as I find, of a character certainly not very beneficial to the defendant company, and having been made without authority shown, by Bosley, it would hardly be one, taking it for granted that he made it, that he would reveal to the company, not only the existance of the contract, but also its nature and consideration. And unless there is some evidence in addition, which would necessarily impute that knowledge, even the acts claimed to have been performed with the defendant company after these alleged acts would not work a ratification.

I have examined carefully the evidence as to payments made by the company after the date of the alleged contract; that is, if it is possible for me to say, from the evidence, what was the date of the alleged contract. I do not find that those payments bear out that contention. And in considering the action of the company we must necessarily consider how it acted on other occasions, especially in regard to what Merritt claims was another contract in regard to alterations, when all, and more than all, of the formalities necessary were observed.

Apart from this, however, look at the payments made, and can we not see that these payments might have been made as they were, equally consistent with other facts than that of the supposed contract here alleged? Here is a contractor, whose backer refuses to advance further funds, and he is unable to obtain such, and may not the company, without binding itself by a parol contract, of which, as far as the evidence goes, it' has no knowledge, have made the payments evidenced by the vouchers offered in evidence in order to prevent the trouble and expense that would at that time result, if the contractor from want of funds should be compelled to abandon the contract?

I have said it is impossible to tell what was the date of the alleged contract. The evidence shows it was between the 1st and the 15th of June. Now, the claim is made by the plaintiff that a payment made on a draft of the Pennsylvania Steel Company on the 4th of June, bears out his contention that the company had ratified the alleged contract. How would it be possible for him to say that this payment could sustain that contract when there is no

legally sufficient evidence of the date of the contract itself?

It is not possible for me to say that any such payment tended to show a ratification of a contract of which there is no legally sufficient evidence that that contract was in existence at the time. And taking all of the other payments made prior to and after the 15th of June, as given by the treasurer, Smith, I could not see, from the entries in his books, that there had been any change in the mode of payment before and after the 15th of June.

I might say, further, that there is evidence from which it is extremely doubtful, in my mind, as to whether Merritt and Hubbell, themselves, acted in regard to certain payments, under the terms of the alleged oral contract. It was at the meeting of October 24th, 1896. Hubbell says: "There was a general discussion there. Merritt was asked what he owed. He stated. And the question came up in regard to making him advances to finish the road. I was asked the question, I don't know by whom now, whether I would persist in holding my prior claim for the orders that I had in, some of which were partially paid, and some of which were held as collateral by the Guardian Trust Company, and the one that was in the Treasurer's hands for $5,400. I said I would not withdraw those, or any other amounts Mr. Merritt might owe me; I wouldn't stand, or hold them in advance of what was due parties for material and labor on the Eastern Shore. * * * * * * * I was willing as to those I had in my possession, that hadn't been accepted; I was willing to hold off and let them take their chance after the $10,000 or $12,000 which he said he owed over on the Eastern Shore, was covered." That is, he refused to withdraw any orders that had been accepted by the company, although, from anything that appears in the evidence, those orders might have been received by him in payment of amounts due him by Merritt before the making of the alleged oral contract, which would hardly be consistent with the terms of that contract as stated by Hubbell and Merritt.

From what I have stated, it follows that the motion to strike out all the evidence in relation to the plaintiff's subscription to the additional loan must be granted.

The second motion I have overruled, not because I am satisfied the evidence should have been admitted, but because it would have no effect on my decision in taking the case from the jury.

The third motion, in relation to the agreement between the plaintiff and the defendant that Sanford and Brooks should be substituted in the place of the plaintiff in relation to building the wharf, must be granted, for the reason that if the agreement with Sanford and Brooks was made before the execution of the sealed contract it varies in an important particular the same, and should be stricken out. If it was made after the execution of that contract it was done with full acquiescence on the part of the plaintiff, with no reservation of a right on his part to claim damages for any delay on the part of Sanford and Brooks in completing said wharf. And the very payments themselves were made on his order. *Volenti non fit injuria.*

The fourth and fifth motions I have overruled on the same ground as the second.

The sixth motion must be granted, because the letter of the engineer produced in evidence, on its face shows that he made the demand that the work be done as necessary under the sealed contract. If the contractor, without objection, or without calling his attention to the fact that he considered it extra work, does the work called for under the contract, he cannot now come in with such a claim. The company could not, if such a claim as this were allowed—neither this company or any other, or any individual, protect itself, or himself, by a contract formally executed.

The company should have been notified, or, at least, the engineer of the railroad company should have been notified of this claim for extras before the work was undertaken so that he could have reconsidered the matter as to whether they were, in any sense, extras; he should have had the right to say, if he thought them extras, whether or not he would have the work done as such.

The seventh motion, to strike out the testimony on the part of the plaintiff as to statements made by Troxel in regard to what it would cost to finish the work, is overruled.

The eighth motion is overruled on account of it being too general.

The prayer offered on behalf of the defendant will be granted.