## KIRCHNER *v.* LAUGHLIN.

### (*Supreme Court of New Mexico.* January Term, 1888.)

1. CONTRACTS—JOINT AND SEVERAL—ACTIONS ON—PLEADING AND PROOF.
    Under Comp. Laws N. M. §§ 1845, 1846, 1889, providing that all contracts which, by the common law, are joint only, shall be construed to be joint and several, and that suit may be brought and prosecuted against any one or more of the parties liable thereon, it is not essential to recovery in *assumpsit,* on a contract laid in the declaration as joint, to prove a joint contract by all defendants. Proof of a several contract with one is sufficient to warrant a recovery as against him.

2. SAME—EXECUTION OF CONTRACT—PROVINCE OF JURY.
    In *assumpsit* upon a contract under seal, the contract was laid in the declaration as joint by both W. and L., defendants. The plea was *non est factum.* The contract, as proved, was signed "W.," and "L., by W." There was evidence tending to prove that W. was duly authorized by L. to sign for him. *Held,* in New Mexico, where, under Comp. Laws, § 2055, the jury is the judge of the weight of the testimony, and the credibility of the witnesses, that although the burden of proof, both as to execution, and as to W.'s authority to sign for L., was upon plaintiff, yet, there being some evidence to that effect, it was error not to leave those questions to the jury.

3. SAME—CONTRACT UNDER SEAL—MODIFICATION BY PAROL—EVIDENCE.
    In *assumpsit,* the cause of action, which was a contract, under seal, for the delivery of sheep and wool, was declared upon as modified and enlarged by a subsequent parol agreement. It was in evidence that the parties had acted under the second contract, and that their situation was so altered that the original agreement could not be enforced without a fraud upon one of them. *Held,* that the contract under seal was admissible in evidence, as tending to show a consideration for the parol agreement.[1]

Error to district court, Santa Fe county.

*Assumpsit* by August Kirchner, plaintiff in error, to recover $3,500 as damages for an alleged breach of contract by Saron N. Laughlin, defendant in error, and one Joseph W. Wiley.

[1] Where the parties have modified by parol a contract under seal, and have executed it as thus modified, the sealed contract is to that extent abrogated. McClay v. Gluck, (Minn.) 42 N. W. Rep. 875. But where the parties to a contract pursue a course inconsistent with its terms, through a mistake, but on discovering their mistake abandon that course, and thereafter conform to the terms of the contract, it will not be deemed to have been modified. Howard v. Railway Co., (Fla.) 5 South. Rep. 356. A parol agreement between the parties to change or modify a written contract is valid without any new consideration, Ruege v. Gates, (Wis.) 38 N. W. Rep. 181; and if one of the parties has performed the contract as modified by parol, the other is estopped from asserting that there was no consideration for the modification, Maxwell v. Graves, (Iowa,) 13 N. W. Rep. 758. This case seems to assume that a consideration is necessary to support a modification as long as it remains unexecuted. Not every new arrangement amounts to a modification of the original contract as a matter of law, but it is often a question for the determination of the jury. Thus, where an ice company refuses to proceed with its contract to deliver ice at a certain price, and the other party then agrees to pay more for ice delivered in the future, the jury must determine whether this new arrangement amounts to a modification of the original contract. Endriss v. Ice Co., (Mich.) 13 N. W. Rep. 590. The rights of third persons accruing under the original contract cannot be affected by parol modifications made without notice to them. Hubbard v. Bellew, 10 Fed. Rep. 849.

*Catron, Thornton & Clancy* and *Mr. Knaebel,* for plaintiff in error. *Gildersleeve & Preston,* for defendant in error.

REEVES, J.   This is an action of *assumpsit,* brought by August Kirchner, plaintiff in error, to recover damages for the breach of a contract with the defendant, Saron N. Laughlin, and Joseph W. Wiley, by which, as the plaintiff alleges, the defendant and Wiley agreed and undertook to deliver to the plaintiff the sheep and wool mentioned in the written contract described in the declaration, and copied in the record.   The plaintiff prayed damages for sum of $3,500, with interest and costs of the suit, for the breach of the contract.   The defendant, Saron N. Laughlin, interposed the plea of *non est factum* to the declaration, denying his signature to the instrument in writing sued on, and denying the authority of any one to execute it for him.   The proof adduced on the part of the plaintiff being closed, the defendant, by his counsel, then moved the court to direct the jury to find a verdict for the defendant, upon the pleadings and the proof.   The motion was granted, and the jury so instructed; to which the plaintiff, by his counsel, excepted.   The jury, pursuant to the direction of the court, returned their verdict in favor of the defendant.   After the rendition of the verdict, and before the entry of judgment, the plaintiff moved the court to set aside the verdict, and to grant a new trial in the cause, upon the ground that the court erred in directing a verdict in favor of the defendant; but the court overruled and denied the motion, and the plaintiff excepted.   From this judgment the plaintiff in the district court brings the case to this court by a writ of error, and assigns for error: (1) The court erred in refusing to permit the jury to determine the issue of fact; (2) the court erred in directing a verdict for the defendant below; (3) the court erred in overruling the motion for a new trial.

In support of the action of the court in refusing to permit the jury to determine the issue of fact, the defendant in error contends that it was incumbent on the plaintiff in error, before he could recover in this suit, to prove a joint contract as laid in his declaration; that proof of a separate contract with either Wiley or the plaintiff in error would be a fatal variance.   Such, it must be admitted, is the doctrine of the common law; but by the statute law of this territory all contracts which by the common law are joint only shall be construed to be joint and several, and suit may be brought and prosecuted against any one or more of the parties liable thereon.   Comp. Laws N. M. §§ 1845, 1846, 1889.

It is further insisted by the defendant in error that the execution of the contract sued on being denied by the defendant in error under oath, it devolved upon the plaintiff to prove the execution of the contract, and that the authority of Wiley to act as agent of the plaintiff must be shown.   The above is a correct proposition, but it is not the precise question in this case.   The question is, "Did the court err in refusing to permit the jury to decide the issue of fact?"   The contract read in evidence is signed by "Joseph H. Wiley," and "Saron N. Laughlin, by Joseph H. Wiley."   William Breeden testified as a witness on the trial that he wrote the contract, and that it was executed by Joseph Wiley for himself and Saron N. Laughlin, and that the additional agreement was written by him, (witness,) and signed by Wiley for himself and Saron N. Laughlin.   But it is objected by defendant that the power or authority of Wiley to act as his agent was not shown.   The plaintiff testified to a conversation between himself and the defendant, Laughlin, Wiley being present; in which conversation he says that Laughlin, addressing him as "My friend," said, "I want to turn over the sheep."   Then Mr. Laughlin turned a little to Mr. Wiley.   They spoke something together that witness did not understand, when Laughlin said to plaintiff, "Please relieve me from the contract."   The plaintiff said, "I should not do it.   You turn over my sheep, and I will do it;" when defendant said, "The contract is closed, and I shall

attend to it very quick." In answer to the plaintiff's question, "Attend to what?" Laughlin said, "I will attend to the turning over of the sheep;" and the plaintiff answered that he was satisfied. The sheep were on Laughlin's ranch, where they were kept by Wiley. Wiley was present, and must have heard the conversation between Kirchner and Laughlin, without calling into question the statement of Kirchner, or objecting to Laughlin's offer to turn over the sheep. The witness Ortiz says he received for the plaintiff, Kirchner, in 1883, 1,200 sheep. He also received all the rams turned over to Sena. The sheep were received from Wiley. It is true, as insisted by counsel for defendant, that his plea of *non est factum* put in issue the execution of the contract, and Wiley's authority to execute it as agent for the defendant, Laughlin. But, without further comment, it would have been proper to have submitted the evidence to the jury, to be considered on the question of Wiley's authority to sign the contract as agent for Laughlin, with Laughlin's concurrence, unless the evidence should have been rejected, or withdrawn from the consideration of the jury, on some other grounds.

Among other grounds, the defendant in error calls attention to the statement in the second count of the plaintiff's declaration, to the effect that the plaintiff delivered to and put in charge of Wiley and the defendant, Laughlin, a large number of sheep, "upon the express promise, undertaking, and agreement of them, the said defendant and the said Wiley," etc. As already shown, the statute of this territory, and not the common law, controls a joint contract, by providing that the plaintiff may treat such a contract as joint and several. In the first count of the declaration the plaintiff declares upon the written contract, (as modified and enlarged by the second contract;) the second is the common count in *assumpsit* respecting the use and return of personal property.

It is further objected by the defendant that, though it was shown that Wiley signed the contract for himself and the defendant, it must also be shown, to make this binding on the defendant, that Wiley had authority to act as such agent, and that no such evidence was introduced on the trial. In addition to the testimony as above mentioned, Kirchner further testified that Wiley exhibited a letter which he said was from the defendant in error, Laughlin; and when the letter was shown to Col. Breeden, and he had read it, he said it was from Laughlin, and that he wanted to make a contract, and that Laughlin was responsible, Wiley being present at the time. No sufficient reason has been shown why this evidence was withdrawn from the jury. In *Bank* v. *Bank*, 10 Wall. 637, the court said: "It appears by the bill of exceptions that, upon the evidence in behalf of the plaintiff being closed, the defendant's counsel moved the court to instruct the jury that it was not sufficient to warrant them to find a verdict for the plaintiff upon either of the counts in the declaration." It is further said, in the same case: "According to the settled practice of the courts of the United States, it was proper to give the instruction, if it were clear the plaintiff could not recover." In the case of *Pleasants* v. *Fant*, 22 Wall. 121, the court quotes the language of Chief Justice MARSHALL, as follows: "The general doctrine on a demurrer to evidence has been correctly stated at the bar. The party demurring admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury may fairly draw from that testimony." In the same case the court held that "the practice of granting an instruction like the present had superseded the ancient practice of demurrer to evidence, and that it answered the same purpose, and should be tested by the same rules; and in that case the question for the consideration of the court was whether the evidence submitted was sufficient to authorize the jury in finding the contract set up by the plaintiff." These cases referred to as cited by the court establish the doctrine that, if the evidence is not sufficient to warrant a recovery, it is the duty of the court to instruct the jury accordingly. It is to be borne in mind that the jury must judge of the

weight of the testimony, and the credibility of the witnesses. Comp. Laws N. M. § 2055.

Again, it is objected by the defendant's counsel that a verbal promise cannot change a written contract, or be taken in lieu of it, without part performance. In the case of *Goss* v. *Lord Nugent*, 27 E. C. L. 37, the court of king's bench said: "By the general rules of the common law, when a contract is reduced into writing, verbal evidence is not allowed to be given of what passed between the parties before the written instrument was made, or during the time that it was in a state of preparation, so as to add to, or subtract from, or in any manner to vary or qualify, the written contract; but after the agreement has been reduced into writing it is competent to the parties, at any time before breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner add to, or to subtract from, or vary or qualify, the terms of it; and thus to make a new contract, which is to be proved partly by the written agreement, and partly by the subsequent verbal terms engrafted upon what will be thus left of the written agreement." The general rules of the common law are clearly enunciated in the above-cited case. It is, however, to be observed that the English statute of frauds of 29 Car. II., declares that no action shall be brought on certain defined contracts within the scope of this statute. The common-law rule in regard to contracts prevails, when not in conflict with this statute. In *Le Fevre* v. *Le Fevre*, 4 Serg. & R. 244, it is held that, where the situation of the parties is altered by acting upon the new agreement, parol evidence is admissible to prove that, after signing a written agreement, the parties made a verbal agreement varying the former, provided their variation had been acted upon, and the original agreement could no longer be enforced without a fraud on one party. Also, *Cummings* v. *Arnold*, 3 Metc. 488, 489; *Emerson* v. *Slater*, 22 How. 28; *McNish* v. *Reynolds*, 95 Pa. St. 483; *Lattimore* v. *Harsen*, 14 Johns. 329; *Canal Co.* v. *Ray*, 101 U. S. 527.

The court did not err in permitting the plaintiff to read in evidence the written contract; not as being the cause of action, but as an inducement to a parol promise by the defendant to the plaintiff. *Munroe* v. *Perkins*, 9 Pick. 298; *Lattimore* v. *Harsen*, 14 Johns. 329. It has been often decided that the altering of a written contract makes it all parol. There must be such an alteration that the parties have acted upon it, and in which the original agreement could no longer be enforced. It is not intended to lay down any rule on this proposition of general application, and causes must be decided on their particular grounds as they arise. *Vicary* v. *Moore*, 2 Watts, 451; *Carrier* v. *Dilworth*, 59 Pa. St. 406; *Munroe* v. *Perkins*, *supra*. In view of modern decisions, it can be no longer doubted that the terms of a written contract under seal may be varied by a subsequent parol agreement. See authorities above cited. Wherever the common law is in force, private seals, being recognized by that system, must be understood as going along with it. The common law has been pruned of many of its excrescences; and it is remarkable that the knife has not been more generally applied to the seal also. "A flourish with the pen at the end of the name, or a circle of ink called a scroll, is taken as a valid substitute for a seal," on which important rights are made to depend. The statute of this territory provides that "hereafter on all documents or instruments in writing requiring a seal, made or used or introduced in evidence in this territory, a scroll may be used as a seal, instead of a wafer, wax, or other impression required by the common law." Comp. Laws N. M. §§ 2742, 2743, 2771. These provisions refer mainly to deeds of conveyance affecting real estate in the territory, and not to contracts like the one in this suit.

We think the evidence in the case at bar as to part performance of the substituted contract, and whether relied upon by the parties, should have been left with the jury for their consideration. Where the situation of the parties is altered by acting upon the new agreement, and the original agreement could

not be enforced without a fraud on one of the parties, it has been shown that parol evidence is admissible to prove such alteration. In such cases the mutual promises of the parties—the one to deliver the property, and the other to receive it—are sufficient considerations to sustain the new contract. As the case is presented by the record, the alleged alteration of the original contract between the parties did not violate the rules of the common law, or the English statute of frauds, which is in force in this territory.

The extent of this opinion is that there was error in withdrawing the evidence from the jury, and no opinion is expressed as to the ultimate rights of the parties on the trial before a jury hereafter. Judgment reversed, and cause remanded for a new trial.

LONG, C. J., and BRINKER and HENDERSON, JJ., concur.