[No. 1461.]

THE PLATTE LAND CO., LIMITED, v. HUBBARD.

1. CONTRACTS—SALES—FORFEITURE.

Where a contract for the sale of land upon annual payments, provides that in case of failure of the purchaser to make any annual payment he shall forfeit all money paid on the contract, the vendor cannot insist on a forfeiture where he himself is unable to perform his part of the contract for want of title.

2. SAME.

A contract for the sale of land upon annual payments provided for a forfeiture of all money paid by the purchaser upon failure to make any annual payment. Afterwards a subsequent agreement was indorsed upon the contract to the effect that title to the land was in the United States and that if the vendor should fail to procure a patent from the United States the purchaser should receive back

VOL. XII—30

all money paid on the contract without interest in full settlement
of all obligations under the contract.  Upon failure of the vendor
to procure the patent the purchaser was entitled to recover the
amount of money paid on the contract notwithstanding he had
defaulted in some of the annual payments.

3. SEALED CONTRACTS—MODIFICATION.

Sealed contracts, especially those as to time and conditions of payment,
    may be abrogated, waived or varied by parol, and the modifications
    shown by oral testimony.

4. CONTRACTS—LIMITATION.

Where a contract for the sale of land provided that if the vendor failed
    to procure a patent to the land the purchaser should receive back
    all money paid on the contract, limitation would begin to run against
    an action by the purchaser to recover back money paid, from the
    time a patent to the land was issued to another party, and not from
    the time the money was paid.

*Appeal from the District Court of Arapahoe County.*

Mr. HUGH BUTLER, for appellant.

Messrs. WELLS, TAYLOR & TAYLOR, for appellee.

Mr. R. T. McNEAL, of counsel.

BISSELL, J.

Among the various propositions urged by the appellant
against Hubbard's recovery, but one ought to disturb the
judgment and that only if the facts bring the case clearly
within the statute of limitations.   It would be so manifestly
inequitable to permit the land company to keep Hubbard's
money without the conveyance or the ability to convey the
land which was the consideration for its payment, that no
court should hesitate in its conclusions unless staggered by
some legal or equitable principle which stops its course.

In 1886, the Platte Land Company had attempted to ac-
quire title to a good deal of land in the vicinity of Denver
which was at that time supposed to be included within the
limits of the government grant to the Union Pacific Rail-
road Company.   There was some question respecting the

limits of the railroad grant, and it was a fairly debatable question whether the land involved in this controversy was included within these limits whereby the land company got title.   The land company had some claim and some evidence of title from the railroad company, and it was apparently making contracts with reference to the disposition of this railroad land though guarding its own interests and the rights of the purchasers in case there should be a failure of title.   In April, 1886, the land company of the first part and Mulligan of the second, made a contract with reference to the north half of section 21 in township 2.   The land need not be otherwise or more completely described, nor need all the terms and conditions of the agreement between the parties be set out.   It is enough to state the outlines as we shall give them.   The purchase price was $6,786.90 with a specified interest.   The payments were divided into seven annuals, the first being $687.69 which was paid, and the others of varying sums and falling due on the 8th of each succeeding April until 1893.   The purchaser bound himself to make these payments punctually as they should fall due and the contract further provided for a forfeiture of whatever should be paid in case there should be a default in making any of the payments.   There were divers stipulations contained in the agreement common to contracts for the sale and conveyance of real property which we need not further specify, and this contract was then executed by the land company and by Mulligan the purchaser.   Had this been all and the only binding agreement made between the parties, there would perhaps have been little chance for the plaintiff to recover. But this contract was in one sense abrogated and another agreement substituted therefor by a subsequent agreement into which the parties entered, apparently by indorsement on the main contract.   This subsequent agreement, or indorsement, or whatever it was, really became the substituted agreement between the parties, and is the one by which their rights are to be measured and determined.   This agreement is:

"It is distinctly understood by the second party, that the

patent for all of the above described land is at present withheld from the Union Pacific Railway Company, by the United States government, and therefore the title to the said above described land does not fully rest in the first party to this agreement, and it is hereby agreed by the second party that in case patent shall not be issued to said railway company, for said land, he shall accept and receive back whatever sums of money he shall have paid to the first party under this contract, without demanding any interest thereon and shall also immediately surrender this contract to said first party, and said first party shall be as fully relieved of any and all obligations under this contract, as if this contract had never been made."

This obligation sets out what the parties agreed on and the conditions and circumstances which led to its execution. There was grave doubt whether the railroad company had title, whether a patent would ever issue to it for the land, and whether the Platte Land Company could ever get the title so as to be able to answer for its part of the engagement. To protect itself, and to protect the purchaser, this agreement, which provided in case patent should not issue, Mulligan should receive back his money without interest, and the company be thereby relieved from its obligation to convey and he from his contract to pay, was a method which the parties provided for the adjustment of any dispute respecting title. It transpired that Mulligan and Hubbard each proceeded to make entry on a quarter section of the land. Such proceedings were had that on the 5th of November, 1889, Hubbard made a cash entry for a quarter section and paid for the land, and in 1890 on the 5th of December the government patent issued to Hubbard, and letters patent were delivered conveying the northwest quarter of section 21, township 2. The event provided for by the contract occurred. The patent did not issue to the railroad company, but the title of the government did pass to the cash entryman who received the evidence of the government's title. The second indorsed clause of the amendatory provision of the original agreement became operative.

It was settled that no patent would ever issue to the railroad company, and Mulligan, the party of the second part, became obligated to take the money which he had paid without interest, and the only question we are called on to decide is, whether he or his assignee has the right to maintain an action against the land company to recover the money, or whether he has lost it because of his failure to make the annual payments.

The land company, which is the appellant, insists that under the terms and conditions of the contract Mulligan forfeited all right to insist on the repayment of the money and lost all claim thereto because he failed to make the annual payments punctually according to the terms of his agreement. We see very little force in this suggestion. We are quite unable to understand how the land company can insist on a forfeiture which is a harsh right unless the company was in condition to carry out and execute its part of the agreement. As we look at it, the company may not insist on forfeiture unless at the same time it was in a condition to convey; the one would in our judgment be entirely dependent on the other; if the land company could never maintain an action for the specific performance of its contract, if it never acquired a title which it could tender and convey on the payment of the consideration money, it never put itself into a condition where it could insist that Mulligan had lost his money because of his failure to comply with the terms of the agreement which it was incapacitated to carry out and execute. The original contract entirely failed, and the consideration on which Mulligan paid his money also failed. The land company received his money, never gave anything for it, nor was it ever in a condition to enforce payment of the consideration by offering to convey the title. Under ordinary conditions, there having been a complete failure of consideration, Mulligan would have the right to recover unless there was some intervening reason. But the strongest answer to the whole contention respecting the matter of forfeiture is found in the indorsed clause on the agreement.

That modification was put in for the benefit and protection of both parties. On the failure of title and whenever and as soon as it was settled that the railroad company could not obtain it, that indorsed agreement became the only agreement between the parties, and according to it, the land company was bound to pay, and Mulligan was bound to receive without interest the money which had been advanced on the contract. This in itself in our judgment is a complete answer to the contention respecting the force and effect of the agreement and the right of the company to enforce the forfeiture.

The land company insists that the court erred in permitting testimony to be given respecting a waiver of the payment of these various annual sums. It is quite immaterial whether the court erred in permitting that testimony, or whether it was properly received because the error if it were one, was entirely harmless when we determine that the right of forfeiture never accrued to the land company and could not accrue so long as they were unable to make title. The evidence however would seem to be entirely admissible. It is urged in the argument that the agreement between the parties was under seal and that the agreement to waive the annual payments lay in parol, and that it could not be thus proven, nor could the condition of a sealed instrument be thus waived. Whatever may have been the law with reference to sealed instruments in the early times, it seems to be now tolerably and completely settled that the conditions of sealed instruments may be abrogated, waived, or varied by parol and the modifications supported by oral testimony. Especially is this true with reference to the time and condition of payment. *Canal Co. v. Ray*, 101 U. S. 522; *Munroe v. Perkins*, 9 Pick. 298; *Homer v. The Guardian Mutual Life Insurance Co.*, 67 N. Y. 478; *Moore v. The Detroit Locomotive Works*, 14 Mich. 266; *McCreey et al. v. Day et al.*, 119 N. Y. 1.

The evidence therefore was entirely admissible, and if inadmissible, was harmless.

The only other question, and in fact the only vital one in the case, respects the statute of limitations. The contract

was made with Mulligan, but by proof respecting the pay-
ment of the consideration, as well as by sufficient evidence
to establish the transfer of whatever title and interest Mul-
ligan had, the right to maintain the suit vested in Hubbard
who became the real party in interest and entitled to maintain
the action.   The only question is, whether he brought his
suit in due time.   The complaint was filed in September,
1895.   This was within six years from the time that Hubbard
made his cash entry, and within five years from the time that
the government patent conveying the title issued to Hubbard.
Under these circumstances it seems to be quite clear that the
action was commenced in due time.   This comes from the
circumstance that the date cannot be computed from the time
the money was paid by Mulligan to the land company because
by the very terms of the agreement no right to rescind or
recover the money, nor demand therefor, could be made by
Mulligan, until the happening of an event which both parties
had agreed should fix and determine their rights.   Of course,
we concede that if there is to be a demand, it must be made
within a reasonable time, and if it be not made within the
time limited by the statute, the claim will ordinarily be barred.
Whenever, as in this case, the parties agree that the right to
demand the money, and the duty to pay it, shall be determined
and fixed on the happening of a given event, the right to
demand, or the right to tender the money could not arise
until that event happened.   The parties agreed that when-
ever the government patent to the land should issue, that
then, and in that event, the rights of the parties should
thereby become fixed, and if it should go to the railroad
company, that then the only right which Mulligan would
have, would be the right to compel the conveyance of the
land, providing he had complied with the conditions of his
contract, or if the patent should go elsewhere, in that event,
the land company should be obligated to pay Mulligan his
money without interest, and he should be bound to receive
it.   When the parties agreed that a fixed, definite event
should determine and settle their rights, we must hold that

not until the event happens, does the statute of limitations commence to run as against either, and that is the point from which the computation must be made. This patent issued in December, 1890. On this date by the terms of the agreement Mulligan had a right to demand and receive his money, and he did not have it before. This was within the period of the statute and the suit was begun in ample time. We are unable to see that the statute of limitation bars the plaintiff's recovery.

It is equally unaffected by the doctrine respecting laches which is frequently invoked in courts of equity, and which is suggested in this case as a bar. The land company has got somebody's money for nothing, and if the plaintiff has shown a right to recover that money, the land company should be compelled to pay unless they can exhibit an adequate defense. It is entitled to no sort of consideration on any equitable principle and the court should not feel itself at liberty to apply the doctrine of laches unless the circumstances compel it. This we do not believe. There is no rule or principle in equity with which we are familiar which will permit the land company to defeat the plaintiff's recovery.

We are unable to discover any errors in the record, and the judgment will therefore be affirmed.

*Affirmed.*