T. B. CARTMELL PAINT & GLASS COMPANY, a Delaware corporation, Defendant Below, Appellant, *v.* MARY E. CARTMELL and GEORGE EDWIN CARTMELL, Plaintiffs Below, Appellees.

*(June 24, 1936.)*

LAYTON, C. J., HARRINGTON and RODNEY, J. J., sitting.

*William Prickett* for plaintiffs below.

*John W. Huxley* for defendant below.

Superior Court for New Castle County, No. 23, January Term, 1936.

HARRINGTON, J., delivering the opinion of the Court:

This case is before us on a demurrer to the plaintiffs' declaration. From that declaration it apears that on October 18th, 1921, Mary E. Cartmell and George Edwin Cartmell, the plaintiffs, leased by an instrument under seal to the T. B. Cartmell Paint & Glass Company, for the period of ten years from, October 21st, 1921, the first floor and basement of a store located on the Northwest corner of Sixth and Madison Streets in the City of Wilmington and a warehouse at Sixth and Windsor Streets in the same city; and for storage purposes the Cartmell Company, the lessee, was, also, to have the use of one room on the second floor and two rooms on the third floor of the Sixth and Madison Streets store-building until those rooms should be needed by the lessors, and they should request the lessee to vacate them. That company was to pay an annual rent of Twenty-one Hundred ($2100.00) Dollars, payable at the rate of $175.00 per month; and without cost or expense to the lessors, was to take charge of and attend to the heater in the Madison Street store, including the removal of ashes therefrom. The cost of the coal to be used in that building was, however, to be divided between the lessors and the lessee.

It, also, appears from the plaintiff's declaration that

the Cartmell Company, the lessee, took possession of the whole of the demised premises on or about October 25th, 1921; that on or about April 1st, 1928, on its own volition, that company surrendered the second and third story rooms in the Madison Street store to the lessors, and by oral agreement with them the rent for the remainder of the leased premises was reduced to $150.00 per month; that on or about December 25th, 1930, at the request of the defendant, and by oral agreement the Windsor Street warehouse was, also, surrendered by the Cartmell Company to the plaintiffs, the lessors, and the rent for the remainder of the property retained by that company was then reduced to $100 per month.

The declaration further alleges, however, that otherwise the said lease and the terms thereof remained unchanged and in full force and effect, and the Cartmell Company continued to occupy the remainder of the premises, to pay the reduced rent agreed on, to attend to the heater, to pay one-half of the cost of heating the store-house at Sixth and Madison Streets, and otherwise complied with its obligations under said lease of October 18th, 1921, until June 25th, 1931, but that no rent has ever been paid for the months ending on the twenty-fifth days of July, August, September and October of 1931.

The Cartmell Company, under its demurrer, claims that a new lease of the premises retained by it was made by the oral agreement of December 25th, 1930, whereby the Windsor Street warehouse was surrendered to the plaintiffs and the rent for the property retained by it was reduced to $100 per month; and that the original written lease of October 18th, 1921, was, by operation of law, abrogated and annulled by the new oral lease.

That company further contends that on and after

December 25th, 1930, it was merely a tenant from month to month of the first floor and basement of the Madison Street store.

These facts do not appear from the declaration but at the argument of the case it was conceded by both parties that the Cartmell Company had vacated the Madison Street store on June 25th, 1931, pursuant to one month's notice to that effect and the payment of one month's rent.

The plaintiffs, the lessors, claim that the oral agreement of December 25th, 1930, was not a new lease and did not abrogate or nullify the original lease of October 18th, 1921, though it reduced the rent therein provided for.

By the provisions of *Section* 3 of the early English *Statute of Frauds* (29 *Chas. II*) an express surrender of demised premises had to be in writing; and this was true though the lease was for less than three years and was, therefore, merely oral. 2 *Tiff. on Land. & Ten.* 1312, 1321; *Hals. Laws of Eng.* (2d Ed.), *Vol.* 18, *p.* 546; *Smiths' Lead. Cas.* (*Vol.* 2, *Part* 2) 803. No such language is expressly incorporated in our *Statute of Frauds* (*Sections* 2626, 4532, 4534 of the *Revised Code of* 1915) but it has been held that the wording of the contract section (*Section* 2626 of the *Revised Code* of 1915) is broad enough to require an unexecuted agreement to surrender even an oral lease for one year, which by statute is valid in this State (*Rev. Code* 1915, § 4534) to be in writing. *Logan v. Barr,* 4 *Harr.* 546.

Under the English Statute of Frauds, in most cases, an agreement to reduce the rent provided for in a lease for a term of years, to be binding on the parties, had to be in writing and based on a good and sufficient consideration. *Hals. Laws of Eng.* (2d Ed.), *Vol.* 18, *Page* 467; see, also, *Hilton v. Goodhind,* 2 C. & P. 591, 12 E. C. L. 277;

*Willist. on Contr. (Rev. Ed.)*, § 593; *Parrish v. Haynes (C. C. A.)*, 62 *F.* (2*d*) 105.

By reason of the similarity of the language used in the statute (*Section* 2626 of the *Revised Code of* 1915) the same rule would necessarily apply here.

█ When the facts justify the application of that rule, a surrender of a lease by implication or by operation of law may, however, take effect, independent of any express agreement providing for it. *Hals. Laws of Eng.* (2*d Ed.*), *Vol.* 18, *p.* 546, 548, 549; 1 *Woodfall on Land. & Ten.* 478, 481; 2 *Tiff. on Land. & Ten.* 1312, 1321; see, also, *Phene v. Popplewell*, 12 *C. B.* (*N. S.*) 334, 104 *E. C. L.* 334.

█ This rule applies to any arrangement or contract between the parties to a lease that clearly operates as a new and valid demise of the same premises when by that contract the new term is to begin during the term of the original lease, and the new lease is, therefore, inconsistent with the continued existence of the prior lease. *Hals. Laws of Eng.* (2*d Ed.*), *Vol.* 18, *p.* 549, 550; 1 *Woodfall Land. & Ten.* 482; *Dodd v. Acklom*, 6 *Man. & G.* 672, 678, 46 *E. C. L.* 671; *Davison v. Bromley*, 4 *Burr.* 2210, 98 *Eng. Repr.* 152; *Phene v. Popplewell*, 12 *C. B.* (*N. S.*) 334, 342, 104 *E. C. L.* 334.

█ As to that part of the premises, the same rule, also, applies when the new lease merely relates to a portion of the lands originally demised. *Hals. Laws of Eng.* (2*d Ed.*), *Vol.* 18, *p.* 549; 1 *Woodfall on Land. & Ten.* 485; *Carnarvon v. Villevois*, 13 *M. & W.* 313, 342.

█ If such a lease is legal and valid, this is true, though the new lease is merely oral, and the old lease was by deed. *Hals. Laws of Eng.* (2*d Ed.*), *Vol.* 18, *p.* 549; 1 *Woodfall on Land. & Ten.* 482; *Dodd v. Acklom*, 6 *Man. & G.* 672, 679, 46 *E. C. L.* 671; *Coe v. Hobby*, 72 *N. Y.* 141, 28 *Am. Rep.* 120.

■ The intentional delivery of possession by the tenant to the landlord and the landlord's actual and intentional entry and acceptance of such possession as such landlord, whether pursuant to an express agreement, or not, also operates as a surrender by operation of law, though there is no memorandum in writing. *Hals. Laws of Eng.* (*2d Ed.*), *Vol.* 18, *p.* 548; 1 *Woodfall on Land. & Ten.* 487; *Phene v. Popplewell,* 12 *C. B.* (*N. S.*) 334, 342, 104 *E. C. L.* 334; *Dodd v. Acklom,* 6 *Man. & G.* 672, 679, 46 *E. C. L.* 671; *Fenner v. Blake,* [1900] 1 *Q. B.* 426; see, also, *Conner v. Jordin,* 7 *W. W. Harr.* (37 *Del.*) 203, 181 *A.* 229. This was true in England before the enactment of the *Statute of Frauds* (*Phene v. Popplewell,* 12 *C. B.* (*N. S.*) 334, 104 *E. C. L.* 334; *Hals. Laws of Eng.* (*2d Ed.*), *Vol.* 18, *p.* 546), and when the contract is wholly executed and it is not necessary to resort to an action to enforce it there would seem to be no good reason why the same rule should not apply even now. See 104 *E. C. L.* 343, note.

In considering this question, Lord Halsbury (*Laws of Eng., Vol.* 18 [*2d Ed.*], *p.* 548) says:

"The surrender * * * depends upon the agreement by the landlord and tenant that the term shall be put an end to and upon change of possession in pursuance of the agreement."

In a note on the same page, he, also, says:

"* * * the law gives effect to the intention of the parties appearing from their acts and cures the informality of the surrender."

It is true that the authorities above cited involve the surrender of leases from year to year which were not required to be in writing, but that does not affect the principle involved. See *Smith's Lead. Cas.* (*Vol.* 2, *Part* 2) 803.

■ Notwithstanding the clause in the English *Statute of Frauds,* relating to the express surrenders of leases, by another provision of the same statute surrenders by "act

and operation of law" were not required to be in writing. 1 *Woodfall on Land. & Ten.* 478, 481; 2 *Tiff. on Land. & Ten.* 1321. That provision is not incorporated in our *Statute of Frauds*, but as surrenders by operation of law are necessarily based on the application of principles, at least kindred to the law of estoppel, the same rule naturally applies independent of statute. *Hals. Laws of Eng.* (2d Ed.), *Vol.* 18, *p.* 549; 1 *Woodfall on Land. & Ten.* 482, 486; 2 *Tiff. on Land. & Ten.* 1322; see, also, *Withers v. Larrabee*, 48 *Me.* 570; *Otis v. McMillan*, 70 *Ala.* 46.

It has been frequently said without qualification that a surrender by operation of law takes effect regardless of the actual intent of the parties. *Hals. Laws of Eng.* (2d Ed.), *Vol.* 18, *p.* 549; 1 *Woodfall on Land. & Ten.* 486; *Cannan v. Hartley*, 137 *Eng. Repr.* 1040, 1046, note; *Lyon v. Reed*, 13 *M. & W.* 285.

It may be that that general statement is too broad to apply to all possible cases (38 *Harv. Law Rev.* 64) but it seems unnecessary for us to decide that question.

■ A surrender of the original lease and a new demise does not ordinarily follow from the mere payment and acceptance of a reduced rent, whether by reason of an oral understanding to that effect, or otherwise. *Crowley v. Vitty,* 155 *Eng. Repr.* 969; *Hoby v. Roebuck,* 129 *Eng. Repr.* 63; *Coe v. Hobby,* 72 *N. Y.* 141, 78 *Am. Rep.* 120; 2 *Tiff. on Land. & Ten.* 1326; 2 *Reed on the Statute of Frauds,* § 788; *Hals. Laws of Eng.* (2d Ed.), *Vol.* 18, *p.* 467, 550. This is because such a subsequent agreement amounts to nothing more than an indulgence on the part of the landlord, or, at the most, to an abatement of the rent mentioned in the lease.

As was aptly said by the Lord Chancellor (Sugden) in *Clark v. Moore*, 1 *Jones & Latouche* 723, 729, 7 *Irish Eq. Reports* 515, 518, which involved an oral agreement to reduce the lessee's rent,

"I should be sorry to hold that because the landlord abates the rent, either for a time or permanently, he therefore, has abandoned the whole contract. It is one thing to say I will take less rent and another thing to say I will create a new tenancy and put an end to the old tenancy   *   *   *.  I cannot hold that a mere abatement of rent a thing which occurs every day   *   *   *   would put an end to an existing contract and create a new tenancy from year to year at the new rent. It is rather the confirmation of the existing tenancy. It is, also, said that the effect is to create a new tenancy   *   *   *; that it would be sort of an implied surrender. That is ingenious but is not warranted in law. In the view of the court this party was a tenant according to the agreement for the whole time."

It is true that it appears from the declaration that by the oral agreement of December 25th, 1930, the rent provided for in the lease of October 18th, 1921, was not only reduced to $100 per month, but pursuant to that agreement a part of the demised premises was, also, surrendered by the Cartmell Company to the plaintiffs, the lessors, and accepted by them.

It is, also, true that with other material facts an agreement to reduce a lessee's rent, and whether oral or written, may perhaps in some cases be evidence of a new demise. 2 *Tiff. on Land. & Ten.* 1326; *Hals. Laws of Eng.* (*2d Ed.*), *Vol.* 18, *p.* 550.

There may, therefore, be cases where the facts would justify the conclusion that the old lease had been abrogated by implication and by operation of law when by a subsequent agreement a part of the demised premises has been surrendered to the lessor and a reduced rent for the remainder agreed on. *Hals. Laws of Eng.* (*2d Ed.*), *Vol.* 18, *p.* 550; *Jones v. Bridgeman,* 39 *L. T.* (*N. S.*) 500; see, also, *In re Young,* 47 *L. T.* (*N. S.*) 480. But that is not necessarily true (*Holme v. Brunskill,* [1877] *L. R.* 3 *Q. B. D.* 495; 2 *Tiff. on Land. & Ten.* 1326), and in order to have that effect it seems that the subsequent agreement must materially and substantially change the other terms of the original lease. *Holme v. Brunskill,* [1877] *L. R.* 3 *Q. B. D.*

495; 1 *Woodfall on Land. & Ten.* 1327; *Hals. Laws of Eng. (2d Ed.), Vol.* 18, *p.* 550.

In 2 *Tiff. on Land. & Ten.* 1326, in discussing this question, the author says:

"A mere change in the amount of the rent by agreement is not the making of a new lease and consequently this does not of itself effect a surrender, though it may be evidence with other facts to show a new demise and consequent surrender. And it has been decided that a relinquishment by the tenant to the landlord of the possession of part of the premises does not effect a surrender of the leasehold in the whole as involving a new demise, whether or not this is accompanied by a reduction in the amount of rent."

Applying these principles, it does not appear from the declaration that a new lease was made, and that the old lease was abrogated in this case.

This conclusion would seem to be logical as if an abatement in the rent is not inconsistent with and does not otherwise effect the validity of the lease there would seem to be no good reason why an executed agreement to release a portion of the demised premises, and on which the reduction in rent is based, should have any greater effect on the rights of the parties.

It is true, as is claimed by the Cartmell Company, the lessee, that when the *Statute of Frauds* requires a contract to be in writing, there can ordinarily be no recovery on a contract which is alleged to be partly oral and partly written. *Hickman v. Haynes, L. R.* 10 *C. P.* 598; *Plevins v. Downing,* [1875] *L. R.* 1 *C. P.* 220; *Goss v. Lord Nugent,* 5 *B. & Ad.* 65, 110 *Eng. Repr.* 713; *Long v. Hartwell,* 34 *N. J. Law* 116; *Brown on the Statute of Frauds,* §§ 409 to 428; *Williston on Contracts,* § 593.

As we have already intimated, the *Statute of Frauds* does not apply to fully executed contracts, so the

above rule has no effect when the written contract required by the statute has been modified by a subsequent oral agreement which has been fully executed by the parties. *McKenzie v. Harrison*, 120 *N. Y.* 260, 24 *N. E.* 458, 8 *L. R. A.* 257, 17 *Am. St. Rep.* 638; *Long v. Hartwell*, 34 *N. J. Law* 116; *Doherty v. Doe*, 18 *Colo.* 456, 33 *P.* 165; *Williston on Contracts,* § 593.

In other words, as was aptly said by the court in *Long v. Hartwell*, 34 *N. J. Law* 116, *supra,*

"A written contract within the statute of frauds cannot be modified or altered by parol, so as to furnish, in its altered state, the basis of an action at law."

The court in that case, also, said:

"It is difficult to perceive how the policy of the statute would be violated by parol proof, establishing * * * an execution of it by a substituted performance [according to a subsequent parol agreement] accepted and enjoyed by the vendee."

In discussing the principle stated in the last paragraph above quoted, Mr. Williston, in *Section* 593 of his *Work on Contracts,* says:

"If the varied agreement has been partly performed, the question must be asked whether the remaining performance is within the statute, and if so whether the part performance, which has taken place, will satisfy the statute. If these questions can be answered in the affirmative there is no difficulty. If the terms of the oral agreement have not been performed, the original contract, generally at least, must be held to remain in force."

The declaration alleges that the oral agreement to surrender the Windsor Street warehouse has been fully executed by the parties, so the plaintiffs are not seeking to recover on a contract which is partly oral.

It is true that the lease was under seal; but, though based on somewhat different principles, a contract

under seal can, also, be varied by a subsequent oral agree-' ment that has been fully executed by the parties. *McKenzie v. Harrison*, 120 *N. Y.* 260, 24 *N. E.* 458, 8 *L. R. A.* 257, 17 *Am. St. Rep.* 638; *Bowman v. Wright*, 65 *Neb.* 661, 91 *N. W.* 580, 92 *N. W.* 580; *Becker v. Becker*, 250 *Ill.* 117, 95 *N. E.* 70, *Ann. Cas.* 1912 *B*, 275; *Williston on Contracts*, § 1836; see, also, *Williston on Contracts*, §§ 1828, 1834, 1835.

At common law, it was well settled that as a general rule the provisions of a contract under seal could not be varied or annulled by contract in any other manner than by an instrument of like grade. *Williston on Contracts*, §§ 631, 1828, 1834; *Wigmore on Evidence*, § 2455. But in recent years, the courts have been inclined to somewhat modify the strictness of the old rule. *Chesapeake & O. Canal Co. v. Ray*, 101 *U. S.* 522, 25 *L. Ed.* 792; *Fleming v. Gilbert*, 3 *Johns (N. Y.)* 528; *LeFevre v. LeFevre*, 4 *Serg. & R.* 241, 8 *Am. Dec.* 696; *Hastings v. Lovejoy*, 140 *Mass.* 261, 2 *N. E.* 776, 54 *Am. Rep.* 462; see, also, *Williston on Contracts*, §§ 631, 1828, 1834, 1836, 1849.

In discussing this question, Mr. Williston in *Section* 1836 of his *Work on Contracts*, says:

"But even in jurisdictions most strongly disposed to adhere to the early law, it seems probable the early authorities * * * giving effect to a parol permission after it had been acted on would merely or quite universally be extended to cover a case where a parol agreement, supported by a sufficient consideration to vary a sealed instrument, has been executed."

He, also, adds: "The doctrine of exoneration or discharge of a contract, before breach, without consideration never applied to sealed instruments"; but it appears from the allegations of the declaration that the oral agreement therein referred to was based on a sufficient consideration.

It is a familiar rule of pleading that performance, or

some excuse or failure to perform, must ordinarily be alleged in proper cases.

Perhaps we might, therefore, add that applying this rule, and, also, applying principles in the nature of waiver or estoppel, though no other contract can be enforced, except that which is represented by the written memorandum required by the *Statute of Frauds,* a subsequent oral agreement varying the terms of that contract may not be without its effect on the rights of the parties in some cases. *Hickman v. Haynes, L. R.* 10 *C. P.* 598; *Plevins v. Downing,* [1875] 1 *C. P.* 220; *Williston on Contracts,* § 595; see, also, *Williston on Contracts,* §§ 1835, 1836.

This is true when it appears from the declaration that the failure of one party to perform the contract in accordance with its terms has been caused by the act of the other party who is being sued and who sets up the non-performance of the plaintiff in defense of the action. *Hickman v. Haynes, L. R.* 10 *C. P.* 598; *Williston on Contracts,* § 595; see, also, *Williston on Contracts,* § 597.

Basing its conclusion on the statement that "It is a sound principle that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned," a similar rule was applied to an executed parol agreement which varied the terms of an instrument under seal in *Fleming v. Gilbert,* 3 *Johns (N. Y.)* 528; see, also, *McKenzie v. Harrison,* 120 *N. Y.* 260, 24 *N. E.* 458, 8 *L. R. A.* 257, 17 *Am. St. Rep.* 638.

Applying these principles, it would seem that if the plaintiffs had sought in their declaration to recover the full amount of the rent originally provided for in the contract of October 18th, 1921, the defendant company, the lessee, could have defended on the ground that pursuant to a subsequent oral contract the Windsor Street warehouse had

been·surrendered to the lessors and a reduced rent for the property retained, agreed on.

If that be true, there would seem to be no reason why that defense could not be anticipated by the plaintiffs in their declaration, and particularly when they, in substance, allege that their failure to fully perform the terms of the original contract was due to the act or request of the defendant.

The demurrer is, therefore, overruled.