# WILLIAM C. MERRITT *vs.* THE PENINSULAR CONSTRUCTION COMPANY.

*Claim for Extra Work Under Construction Contract Providing for a Written Order for Such Work—Inadmissibility of Parol Evidence to Vary Written Agreement—Wilful Abandonment of Work Under a Contract Before Completion—Authority of Agent to Vary Contract Made by Corporation—Ratification by Corporation of Unauthorised Act of Agent—Delay in Performance of Contract.*

Plaintiff contracted in writing to construct a railroad for defendant according to certain plans and specifications. The contract provided that "no claim for extra work shall be allowed unless the work shall have been done in pursuance of a written order from the engineer and unless the claim be presented at the first settlement after the work was executed." Plaintiff claimed compensation for extra work not so ordered in writing, alleging that the same was not the kind of extra work within the meaning of this clause, and also offered evidence to show that before and immediately after the signing of the contract, an oral agreement was made between him and the defendant to the effect that excess of work caused by change in the plans would be paid for by the defendant. *Held,*

1st. That this evidence is inadmissible, because an offer to vary a written contract by evidence of a previous and contemporaneous oral agreement, and is not an offer to show a collateral agreement as to an independent matter about which the written contract is silent.

2nd. That the provision in the contract relating to extra work included all kind of work done in the construction of the road and that con-

sequently plaintiff is not entitled to recover for work alleged to be extra but not done in pursuance of a written order from the engineer.

The written contract between plaintiff and the defendant company provided that plaintiff should build a designated section of a railroad according to certain plans and complete the work within six months. Ninety per cent of the price was to be paid to plaintiff from time to time upon certificates of the engineer. These sums were paid. Plaintiff abandoned the work after the expiration of the six months, leaving it incompleted, and brought an action agains the company alleging that defendant's general manager had agreed to furnish materials for the completion of the work in consideration of a subscription by plaintiff to the bonds of the road; that this had not been done and that consequently plaintiff was justified in abandoning the work. *Held,* that the evidence failed to show that this agent had authority to make the alleged supplementary agreement or that such agreement had ever been ratified by defendant, and that since plaintiff had abandoned the work under the contract without any legal excuse therefor, he is not entitled to recover.

Appeal from the Court of Common Pleas (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*J. Markham Marshall* (with whom was *Howard Bryant* on the brief), for the appellant.

If Merritt deliberately and wilfully abandoned his contract or stopped work thereunder without legal excuse, he would not be entitled to recover against the company in any form of action, but if the performance of the contract was prevented by the company, or if there was legal excuse for stopping work thereunder, he would be entitled to recover from the company in this suit the value of the work, labor and material furnished the company, as set forth in the case. *Gill* v. *Vogler*, 52 Md. 663. Considering the question between the parties in this light, we submit: 1. That by the terms of an agreement entered into between Merritt and the construction company on June 1, 1896, Merritt was entitled to demand of the company the money to purchase the materials necessary to complete his contract for the construction of the Queen Anne's railroad, and that the refusal of

the company to advance this money in conformity with the agreement of June 1st, 1896, prevented Merritt from completing his contract for the construction of the road.   2. That the company was confessedly without funds in September and October, 1896, and that its insolvent condition was alone sufficient to entitle Merritt to discontinue work under his contract.

We are not required to prove Bosley's authority to make the contract with Merritt by showing that it had been expressly conferred upon him by the company or its directors, but we may show his authority by showing that his acts were recognized and adopted by the company or by its directors.   As this Court has said in several cases, "not only his appointment but his authority may be implied from the adoption or recognition of his acts by the corporation or its directors."   *Eckenrode* v. *Chemical Co. of Canton,* 55 Md. 65; *Equitable Gas Light Co.* v. *Baltimore Coal Tar Company,* 65 Md. 81–82.

What were the circumstances under which the company repudiated the contract of June 1st, 1896, as having been made without authority?   It was done after nearly four months' acquiescence and at a time when the company was, by Bosley's admission, unable to raise money on account of the stringency of the times, and when it would have been doubly difficult for Merritt to do so, not only on account of the stringency of the money market, but also on account of the uncertainty of final payment by the company.   It was done also at a time when Merritt had furnished over $19,000 in work, labor and materials, which the company are now seeking to retain under the pretext that Merritt wilfully abandoned the completion of his contract for building the road.   We respectfully submit, that under every principle of equity and fair dealing the company was estopped to deny the authority of Bosley, and we especially insist that it would be grossly inequitable to allow them to repudiate the contract made by Bosley, and at the same time retain the benefit of the work, labor and material furnished by

Merritt upon the faith of said contract. The company cannot repudiate the contract, and at the same time retàin the benefits conferred upon its faith. *Thompson on Corporations*, secs. 5258, 5298, 5308.

The lower Court suggests, in its opinion, that the contract in question being very little to the advantage of the corporation, the probability would be that Bosley would not reveal its existence or disclose its terms to the company or its directors. We submit, in reply to this suggestion, that the directors of the company were charged with the duty of knowing what was going on in the corporation, that they were bound to inquire and presumed to know why these payments were being made, and that Merritt had a right to assume that the directors were performing the duties devolving upon them. He was entitled to assume that when the company permitted Bosley to make the numerous payments to him, which the evidence shows were made subsequent to June 1st, 1896, that the directors had inquired of Bosley, or had been informed by Bosley, why the funds of the company were being paid out at a time when nothing was due to Merritt by the terms of his written contract. The executive committee would have asked at once, when they met to pass upon the vouchers for payments, why those payments were being made, and if they neglected to do so, neglected the plain duty imposed upon them, a presumption equally fatal to the company arises, the presumption that Bosley had entire charge and full authority in matters of this kind. See *Grand Rapids R. Co.* v. *Van Dusen,* 29 Mich. 445; *Webb* v. *Martin*, 110 U. S. 14; *Scott* v. *Middletown R. Co.*, 86 N. Y. 200; *New Hope, etc., Bridge Co.*, v. *Phœnix Bank*, 3 N. Y. 156; *Hazlehurst et al.* v. *The Savannah, etc., R. R. Co.*, 43 Ga. 54; *Chicago and Northwestern Railway Co.* v. *James, etc.*, 24 Wis. 392; *Kissam* v. *Anderson*, 145 U. S. 438; *Merchants' Union Barb Wire Co.* v. *Rice*, 70 Iowa, 14; *Taylor on Corporations*, 3rd ed., secs. 212, 213 and 214; *Thompson on Corporations*, sec. 5224; *Fishkill Savings Institution* v. *National Bank*, 80 N. Y. 168; *Martin* v. *W. F. P. Mnfg. Co. et al.*, 122 N. Y. 175.

As to the extra work the case of *Abbott* v. *Gatch* 13 Md. 314, differs from the case now under consideration in that there was nothing in the evidence before the Court tending to show that the extra work referred to in the written contract was not meant by the parties to include all kinds of extra work, and the Court decided that the extra work referred to in the contract covered alterations in the plan or mode of doing the work, as well as additions to or improvements in and about the completion of the work. This case clearly defines the distinction between the kinds of extra work which a contractor or builder may be required to perform. It recognizes that there are, in fact, two kinds or classes of extra work, to wit : the kind caused by alterations in the plan or mode of doing the work and the kind caused by additions to or improvements in and about the completion of the work, or ordered during the progress of the work. In the present case the offer was to show that concerning the first class of such work there had been an independent verbal agreement made between the parties prior to the making of the written contract offered in evidence, that the existence of this agreement had been admitted subsequent to the execution of the written contract and that work of this class had been done by the contractor relying upon the existence of the verbal agreement above referred to. See *Woods* v. *Fort Wayne R. R. Co.*, 119 U. S. 316; *Annapolis R. Co.* v. *Ross*, 68 Md. 310.

He contracted to do a certain definite thing, to wit : To build the Queen Anne's Railroad Company as described in the plans and specifications before him at the time that he made his bid, and by implication and fair intendment, he bound himself not to refuse to put into such work such additions and improvements as the engineer might order from time to time, provided he was compensated for such additions and improvements according to the terms of the written contract. But if work is done by him upon the order of the company, and accepted by the company, and that work is caused by a change in the plans and specifications

before him at the time he made his bid, such work is not
work upon the thing he contracted to do and consequently
is not within the meaning of the clause regarding extra
work.   There are numerous authorities where the Courts
of other States have laid down the distinction between the
different classes or kinds of extra work.   Among these
cases are the following : *Seymour* v. *Long Dock Co.*, 20 N. J.
Equity 396; *DuBois* v. *Delaware aud Hudson Canal Co.*, 12
Wend. 234; *Thompson* v. *U. S.*, 3 Court of Claims Reports,
431; *Messenger* v. *City of Buffalo*, 21 N. Y. 196; *Bartlett* v.
*Stanchfield*, 148 Mass. 394.   It being clear, therefore, from
these authorities, that there are two classes of extra work
and as the contract in this case merely refers to extra work
generally, we respectfully submit that the evidence offered
by the plaintiff ought to have been admitted to show what
was meant by the language employed in the contract, and
it ought to have been left to the jury to find from all the
evidence in the case what was the contract between the par-
ties.   *Roberts* v. *Bonaparte*, 73 Md. 198; *Fusting* v. *Sulli-
van*, 41 Md. 169.

*Archibald H. Taylor* and *William L. Marbury,* (with whom
were *E. P. Keech, Jr.* and *J. P. Bruns*, on the brief), for the
appellee.

To overcome the difficulty that under the contract, as
proven by himself, he could have no recovery, the plaintiff
adopted the simple but necessary device of proving another
contract, namely, that the parties had themselves altered or
varied this contract.   These alterations were tendered in
two particulars and for two purposes.   One, that there had
been change to provide for extra work, as if no provision
for the same had been made in the original contract, and
thus allow of recovery for extras.   The other, that the
method and date of payment fixed by the contract, had
been changed by agreement of the parties, so that the de-
fendant himself became in default, and the plaintiff was jus-
tified or excused by his abandonment of his work, and

might thus be enabled to recover as if he had been pre-vented from performance by the defendant. It seems to be believed by the appellant, that a long-negotiated and laboriously-drawn contract can thus be made a mere foot-ball for sport by some juggling cant to the effect " that this extra work is extra the extra work provided for by the contract." It may be noted, that when the appellant afterwards was allowed by the Court (subject to exception) to give evidence of his so-called extra work, every item of it was what the engineer termed during its performance " in accordance with the specifications." But look at the terms of the contract and see if it was intended to pay for work and materials exceeding the amount that was estimated or called for by the contract. We will see that all estimate of the amount of work or material required by the contract, was carefully excluded from the contract which declared that mileage alone should be the basis of the consideration.

The repetition of the alleged agreement, after the making of the written one, gives it no more virtue or legality, as is admirably stated in the case of *Frost* v. *Everett*, 5 Cowen, 497 ; *Lazear* v. *Bank*, 56 Md. 78 ; *Philips on Evidence*, vol. 3, page 1478 ; *Knowlton et al.* v. *Keenan et al.*, 146 Mass. 86. The passages in which the contract expressly nega-tives the theory that there could be any work in connection with the construction of this section of the railway, that was to be regarded and paid for as extra work, except under the directions relating to extra work in the contract, or that the consideration or method of payment could be changed or added to on any account whatever, are num-erous, but always consistent.

It is to be observed that nowhere in the contract, drawn with all the particularity of which the parties were capable, apparently, is there any statement of the quantity of labor or material required for the performance of the work, or any calculation of the same, but that it is only too plainly (taken with the refusal of the bid, based upon such a method), intentionally omitted. And the contractor agrees

to do the work and furnish the material whatever it may be in amount, quantity and quality, according to the plans and instructions, profiles, lines, levels, drawings, as from time to time shall be given by the chief engineer of the railroad company, and to receive his compensation in full for the same in accordance to a mileage basis. It was not contemplated that any extra work should arise, so inclusive is the contract made in its terms. But if anything did arise which could be claimed as such, in order for the contractor to receive anything more than the total mileage compensation fixed by the contract, it was requisite for him to get the written order of the engineer, and to have the claim allowed as such at the first settlement after obtaining it. If he were called on to do extra work as it appeared to him under the terms of the contract, he could have refused to do it until the engineer certified it to be such, and his claim was adjusted. But it was certainly simply dishonest for him to do work which the engineer expressly designated as work required by the contract, without any claim to the contrary on his part, and then attempt to charge it as extra work, when he had terminated his contract. This will dispose of the question that arises under the sixth and last exception, where the claim for extra work done under a so-called written order, which expressly designated as not extra work, is claimed to be payable as such. *See Abbott* v. *Gatch*, 13 Md. 314, where this Court says there is no such thing as extras, extra the extras. That extra work arising from change of plans cannot be recovered for except under the conditions applying thereto in the contract. *Baltimore Cemetery* v. *Coburn*, 7 Md. 202 ; *Cannon* v. *Wildman*, 28th Conn. 473 ; *Stewart* v. *Cambridge*, 125 Mass., 102 ; *Davis* v. *Ford*, 81 Md. 333.

Bosley had no authority to vary or enlarge the contract of the defendant made under its corporate seal. *Boynton* v. *Lynn Gas Lt. Co.*, 124 Mass. 197; *Fitzhugh* v. *Franco Texas Land Co.*, 81 Tex. 311; *Western R. R. Co.*, v. *Bayne*, 11 Hun, 166-170; *Gamacho* v. *Co.*, 37 N. Y. (Supp.) 725;

*Mahony Mining Co.* v. *Anglo Cal. Bank*, 104 U. S. 707 ; *Bedford R. R. Co.*, v. *Bowser*, 48 Pa. St., 36, 37 ; *Grant* v. *R. R. Co.*, 69 N. W. R. 23; *Allegeheny R. R, Co.*, v. *Steele*, 1 Pennypacker, 312.

PAGE, J., delivered the opinion of the Court.

This suit was instituted by the appellant to recover from the appellee the value of work, materials and labor, under a written contract for the construction of the Queen Anne's Railroad, and also for extra work and materials. The *narr.* contains only the common counts in assumpsit, and no bill of particulars was filed. The defenses set up by the pleas, are *non assumpsit*, and that the plaintiff entered into a written contract with the defendant for the building of the railroad and the plaintiff did not complete the work within the time specified in the contract, etc., whereby the defendant suffered great loss, over and above all claims of the plaintiff, for which the defendant claimed judgment.

Five exceptions to the admissibility of evidence were taken by the plaintiff, and all the evidence, not stricken out at the time it was tendered, was admitted subject to objection. At the end of the examination of the witnesses, the defendant offered eight motions to exclude different portions of the evidence, three of which, together with an instruction taking the case from the jury, were granted by the Court.

Instead of considering separately, the several motions of the defendant and the action of the Court thereon, we will take up the whole case as it is presented in the record, and determine in that manner the legal principles applicable to the points involved.

In the summer of 1895, the appellant, in an interview with the general manager of the appellee, was shown "the plans and profiles but not the estimates of quantities of work" of the proposed railroad. Subsequently the appellant, having gone over the route, made two proposals for the building of the road ; one " submitting prices per cubic yard per foot, board measure, and so much for track laying ; " the other

" for building the road at so much per mile." The appellee
accepted the latter, and on the 11th day of September 1895,
entered into the written contract, which appears without
abbreviation in the record.   It seems to be a carefully con-
structed instrument, in which the respective rights and
obligations of the parties are minutely prescribed.   It is too
voluminous to be inserted in full in this place, but we will
cite such portions of it, as may be required for the purpose
we have now in view.  By its first item, the appellant, agrees
" to construct, build, complete and equip, ready for operation,
the first section of the line of railway, known as the Queen
Anne's Railroad, from the sea end of the pier or wharf at
Queenstown, to the west side of the Choptank river at or
near Denton   *   *   estimated at about twenty miles, includ-
ing the wharf at Queenstown, and including in such con-
struction all the grading and masonry, track-laying and
other work, and the furnishing of the rails, ties and all other
material required for a single-track railroad, ready for opera-
tion on said section, as laid off, surveyed and designated by
the chief engineer, etc. , including more particularly all work
required to be done by the company on said section in strict
accordance with the annexed specifications, which are signed
by the parties hereto, and are made a part of this agreement,
and are hereby declared and accepted as an essential part
of the same, etc., all of said work was to be done under the
direction and inspection of the engineers of the Queen
Anne's Railway Company appointed to superintend the
same," and to the " full satisfaction and acceptance" of its
chief engineer in " strict conformity with such lines, levels,
stakes, profiles, plans, maps, drawings, specifications and
instructions as shall from time to time be given by the chief
engineer as  herein provided for the direction and guidance
of the contractor."   If replacement or repairs became nec-
essary before the final acceptance of the whole work, by
reason of defective material or workmanship, it was to be
done at the expense of the contractor.   The entire work
was to be commenced within six days after the 11th of

September, 1895, and completed within six months, unless it was delayed by unavoidable strikes or legal proceedings; and this time was to be considered as of the essence of the agreement. The "whole and full consideration," "for the final, total and satisfactory construction," was $6,750.00 per mile. The wharf at Queenstown, to be charged for, "as forming so much linear part or portion" of the work, was to be finished first, and ninety per cent of its cost, or if it cost to exceed $10,000, then not more than $9,000 was to be paid on its completion, as part of the whole consideration to become due under the contract. The balance of the consideration was then to be divided equally per mile, and when each five-mile section was completed, ninety per cent of the money due for that section was to be paid, it being intended that the ten per cent thus retained should stand as security for loss, &c, and not be paid over until the completion and acceptance of the whole work. The specifications annexed, specifically made a part of the agreement, contain directions for the details of the work, yet, from the nature of the case, there were many things that could not be minutely specified, but yet were contemplated should be done by the contractor, to complete the work according to the true spirit and intent of the general plans, and in such cases the specifications provide the work shall be done as the engineer may direct. To protect the company from charges on account of extra work, it was provided, that "no claim for extra work shall be allowed, unless this work shall have been done in pursuance of a written order from the engineer, and unless the claim be presented at the first settlement after the work was executed." One of the chief contentions of the appellant grows out of the proper construction of the clause just cited. There is no evidence that the work for which he claims an extra allowance was done in pursuance of a written order from the engineer, but he insists that he has a legal right to recover for it in this suit because of an alleged oral agreement between himself and the company, made before

the signing of the contract and immediately thereafter by the president, to the effect " that if any change was made in the plans of the work, which entailed work in excess of the work called for by the contract," such excess should be paid for by the company.   Upon the plaintiff's offer to prove such an oral contract, the Court ruled that to do so would be to alter the written contract and the evidence was therefore inadmissible.   The offer was in effect to prove that contemporaneously with the making of the written contract, (that is, " before and immediately after,") there was in respect to the extra work a verbal contract, other than that contained in the written. paper.   Whether that was competent for him to do must depend upon the proper answer to be made to the question, was the verbal contract an independent agreement about which the written contract is silent?   That question in this case is purely one of law, for the reason that its determination depends entirely upon the proper construction of the written agreement.   Did the parties, according to a fair and proper construction of what they reduced to writing, intend that all extra work of every kind should not become the subject of additional charge, unless the same was ordered in writing by the engineer, and the claim therefor presented at the first settlement thereafter?   If the Court should so hold, then, the oral agreement is not collateral, but is a modification of the written contract, and cannot be proved without violating the well-. established rule of evidence.   The question in *Bonaparte's case*, 73 Md. 199, was whether, when the contract between the parties was partly in writing and partly by parol, the jury were at liberty, from all the evidence in the case, written as well as oral, to find what the contract actually was ; here the question is, do the provisions of the written contract include the subject-matter of the oral agreement? for if they do, the written paper is conclusive, and parol evidence inconsistent therewith cannot be offered.   *Fusting* v. *Sullivan*, 41 Md. 169.

What then is the proper construction of this clause?   The

case of *Abbott* v. *Gatch*, 13 Md. 329, is conclusive on this point.     There was in that case a similar provision in a contract to put up a mill.     The Court said, "the object of such a provision in building contracts is certainty as to the terms on which the work is to be done."     The extra work for which compensation was claimed was in making certain alterations and putting in portions of the mill, not embraced by the terms of the contract.     One of the questions involved was the right of the plaintiff to claim therefor additional compensation.     It was held that the contractor "was under no obligation to receive suggestions from Abbott; on the contrary, if he deemed them unsuitable or impracticable, or likely to cause increased expense, he should have resorted to the contract, as containing all that he was required to perform, and insisted on having the additional work brought within its terms as well for his own protectection, as to prevent misapprehension on the other side. *   *   We take the true construction to be, that there was to be no charge for extra work, that is, for any work beyond that stated in the contract, no matter what it might be, whether alterations in the plan or mode of doing the work or additions or improvements in and about the completion of the mill, unless reduced to writing and attached."     The same doctrine was affirmed in the later case of *O'Brien* v. *Fowler*, 67 Md. 565, where the claim was for "work and materials not embraced in said written contract," which contained a similar provision with reference to extra work. The Court said " without the written order and approval, as provided by the contract, any extra work that may have been done was not embraced by such contract,   *   *   and to entitle the plaintiff to claim under the contract, he must claim in conformity to the terms and not otherwise.     The very object of the stipulation in the contract was to exclude such claim for extra work, except upon the condition prescribed."     That was an action of covenant, and the Court proceeded to say, that if the extra work and materials were furnished by "the order and direction of the defendants,

and they expressly promised to pay for the same," and "that the written orders were not received for such work and materials by reason of inadvertence and neglect, and that the defendants waived such written orders and approval thereof," then the plaintiff would have had a right of recovery in an action of *assumpsit.* If the plaintiff in this case had shown that the defendant expressly promised to pay for the extra work, or had waived the written orders, a different case from that now before us would have been presented. *Stuart* v. *Cambridge*, 125 Mass. 108; *Balto. Cemetery Co.* v. *Coburn*, 7 Md. 208; *Wortman* v. *Kleinschmidt*, 30 Pac. R. 283; 12 Mont. 316; *Russell* v. *Da Bandeira*, 13 C. B. (N. S.) 149.

We do not think this Court questioned the doctrine laid down in *Abbott* v. *Gatch, supra,* by anything said in the case of *A. & B. S. L. R. R. Co.* v. *Ross*, 68 Md. 319. In that case a different question was involved. The right of the railroad company to make alterations was unquestioned, but it was limited by a provision that such alterations should not subject the contractor to "an expense in construction beyond the proportion of the balance of the work." It was held that the construction of the contract was for the Court, but "whether the work as finally done was within its scope" was a question for the jury; that is whether the work as done, increased the expense beyond the proportion of the balance of the work. In *Bartlett* v. *Stanchfield*, 148 Mass. 395, there was evidence of an express promise to pay for the extra work and also of a waiver of the written contract. In *DuBois* v. *The Del. & Hudson Canal Co.*, 12 Wend. 334, the extra work referred to was such as was caused by an alteration of the line of the canal, by the very terms of the contract, and it was held that the enumeration of this one species of extra work was an exclusion of all others. In *Wood* v. *Fort Wayne*, 119 U. S. 312, in addition to the clause like the one under consideration, there was another to the effect that the trustees could make any alterations in the plan of the work, and it was held that by

a proper construction of the two taken together, the extra work referred to in the first clause did not include that referred to in the second. We do not regard this case as in conflict with *Abbott* v. *Gatch, supra,* in any respect.

Upon the whole we are of the opinion that the provision relating to extra work includes all kinds of work, and if this be correct, it follows that the Court was not in error in excluding the evidence of the oral agreement.

The wharf at Queenstown was completed in March, 1896; the first section of four miles about the first of May; and the second and third sections in September following, at least as far as to entitle the appellant to the ninety per cent payments. By the first of October about four miles of track remained to be done on the fourth section. Sometime in June, 1896, the appellant had an interview with Mr. Bosley, in which that gentleman agreed that if the appellant would subscribe $10,800 to the loan then being raised to complete the road to Rehoboth, the company would furnish him with the material (about $17,700 worth) to complete the fourth section, and it was upon that promise, the appellant states, that he made the subscription for that amount. He further testified that in October following he had an interview with the president and other officers of the company, at which they told him they would get the committee together the next day, and "see whether they would advance the material;" that after waiting a month the committee met on the 25th of October; that "the matter was submitted to them whether they would furnish this material and they refused to furnish it, and the appellant then said that was end of it, he could do nothing unless they furnished the money to get material." Hubbell, who was Merritt's financial backer, also testified in substantially the same manner.

It is contended this is a valid agreement, binding upon the company, and that the consideration the appellant was to receive was that "his difficulties about obtaining materials was removed, and in order to bring about this result he was

willing to subscribe to the proposed loan and thus risk on the success of the enterprise $10,800 in addition to the $10,000 stock he had already subscribed for." The importance to the appellant of establishing this contract as a binding obligation on the appellee is obvious. The work was to be completed within six months from the eleventh of September, 1895. In October, 1896, the appellant abandoned the work, the fourth section being then uncompleted. He had received all sums then due him under the contract. If the company in June promised to furnish the money for materials and failed to do so, whereby he was unable to complete the work, his failure having been brought about by the act of the company, he could recover in this action for whatever he has actually done. *Gill* v. *Vogler*, 52 Md. 663; *Bull* v. *Schuberth*, 2 Md. 57.

Would the agreement, if fully proven, be valid and binding on the appellee? To so hold, it must be made to appear that Bosley had power and authority to bind the company in such agreement, or that the company subsequently ratified and adopted it. There is no evidence that the corporation had ever conferred upon him the authority to make agreements at variance with contracts made by the corporation under its corporate seal. At a meeting of the stockholders at which the appellant was present on the 31st of July, 1895, the directors were authorized to appoint committees to transact all business entrusted to them; and on the same day the board appointed a committee on contracts and entrusted to them the duty of supervising and authorizing all contracts, and upon such authorization the " proper officers " were to sign and carry them out. Bosley was never a member of this committee. There can be no presumptions as to Bosley's power to make this contract for the company in this case, from the fact that there is no evidence that he ever at any time attempted to exercise such a power, and even if there was, the appellant was not at liberty to so presume. He knew what the usual course of the business was with respect to the making of contracts.

He was present at the meeting of the contract committee on the 11th September, 1895; and knew every step that was taken with reference to the contract of that date. And again, when it was proposed to change the location of part of the line, he made his proposal in writing for the work to the contract committee, which thereupon authorized the change and accepted his bid. It is clear, therefore, from the evidence before us, that Bosley in point of fact never had the power expressly conferred upon him, and had not performed acts from which the appellant could justly presume an acquiescence by the directors. *Western R. R. Co.* v, *Bayne*, 11 Hun. 171; *Boynton* v. *Lynn Gas Light Co.*, 124 Mass. 197.

But it is also contended that Bosley's authority must be implied from the adoption and recognition of the agreement by the company, from the time at which it is alleged it was made, until the 24th of October, when the advance of money for materials to finish the fourth section was refused and the appellant abandoned the work. *Eckenrode* v. *Chemical Co. of Canton*, 55 Md. 65.

Is there any evidence, however, of such " adoption and recognition?" If there is, it would tend to show that the company ratified the contract, whether Bosley had authority or not to make it, provided it was also shown that the company committed such acts of recognition with full knowledge of all the material facts and circumstances. *Adams Ex. Co.* v. *Trego*, 35 Md. 69.

Now, the chief ground upon which the appellant contends, there has been such " adoption and recognition," is, that " Bosley continued during a period of four months to order payment to be made to Merritt for materials, and the executive committee of the company continued during the period to approve the vouchers for the payments so ordered." The contract sought to be established, and of which it is said this course of dealing on the part of the company amounted to a recognition of its binding effect, may be restated as being that the appellant signed the subscription-

loan in consideration of the promise of the company to furnish him materials, or advance him money to pay for materials. The evidence, however, does not show or tend to show that the company advanced him " money for materials " or furnished him material. As far back as March, 1896, the company made him payments, partly in cash and partly on orders, on account of the work. When orders on the company were given and paid, it was particularly stated therein that payment was to be made " out of the first monies that become due," " under the contract between your company and myself, dated September 11th, 1895." There is here certainly no recognition or adoption of the oral agreement of June, 1896. And there is nothing to show that anything further was intended than is apparent upon the face of the orders. No changes were made in the method of dealing between the parties after June, '96, and no testimony whatever was offered tending to show that the company at any time paid or advanced any money, except in fulfillment of their obligations under the contract of September the eleventh. In fact the only evidence we have been able to find, that tends to show the attitude of the corporation towards this alleged contract, is that which pertains to the meeting of the contract committee in October, when the appellant was told that the committee refused to furnish any material, or make any advances for material, to enable him to complete the work. We will not prolong this opinion with a farther discussion of this phase of the case, except to say that after a full examination of the evidence, we find none proving or tending to prove any ratification or adoption of this alleged agreement.

We do not perceive the relevancy of the evidence relating to the construction of the wharf by Sandford & Brooks. The appellant testified that he had gone to Mr. Brooks himself and told him that his company could have the job of building the wharf " if he wanted it ;" and that that company was paid by the construction company upon orders given by the appellant. If he did not make the contract as he con-

tends with Sanford & Brooks, he had at least assented to its being made, and if he was in fact delayed by them in beginning the construction of the road, no blame attaches therefor to the construction company.

We find nothing in the proof contained in the record that presents a legally sufficient reason for the abandonment of the work by the appellant, and that being so, in view of what we have already said upon the other points in the case, the instruction granted by the Court was proper.

*Judgment affirmed.*

(Decided June 15th, 1900.)