## H. W. NELSON CO., Inc., v. GRAND·TRUNK WESTERN R. CO. et al. *

### No. 6730.

Circuit Court of Appeals, Sixth Circuit.

Oct. 8, 1935.

Rehearing Denied Dec. 9, 1935.

---

*Certiorari denied 56 S. Ct. 592, 80 L. Ed. ——.

J. H. Clark, of Detroit, Mich., and Newton D. Baker, of Cleveland, Ohio (Clark, Klein, Ferris & Cook, of Detroit, Mich., on the brief), for appellant.

John J. Gafill and H. V. Spike, both of Detroit, Mich., for appellee.

Before HICKS and ALLEN, Circuit Judges, and NEVIN, District Judge.

HICKS, Circuit Judge.

Appeal from an order dismissing the action.

Appellant, a general contractor, brought suit against appellee, successor to Detroit, Grand Haven & Milwaukee Railway Company, for damages resulting from inability to proceed with the construction of a railroad grade it had contracted to build, due to appellee's delay in acquiring full title to the right of way, and to its misrepresentations to appellant as to the state of its title. The construction was incidental to the widening of Woodward avenue, a state highway leading north from Detroit. The widened highway covered portions of appellee's old right of way and the construction, involved, was of the relocated railroad grade.

The declaration was framed in three counts. The first set forth that appellant made a bid which was accepted for the grading of the relocated line extending from a point in Royal Oak, Mich., northwardly about nine miles to a point beyond Birmingham, Mich. The contract was

prepared between May 29 and June 21, 1928, was executed about June 22, 1928, and was filed as Exhibit A to the declaration.

It was averred that by the terms of the contract appellee was to provide the right of way free from any liens, claims or interests of any person or persons other than appellee so that appellant might proceed expeditiously; that about June 1 appellee notified appellant that it had secured substantially all the right of way and ordered appellant to commence work at Maple avenue, Birmingham; that having already moved its equipment to the right of way appellant assembled it together with a working force at Maple avenue ready for actual excavation on June 12, when appellee "notified plaintiff to remove all equipment and track material, including track already laid south of Maple Avenue, advising the plaintiff's representative * * * that injunctions were pending or threatened which prevented the doing of the work to be performed at this point * * *," and ordered the equipment moved to Charing Cross road, two and a half miles south, which change resulted in large expense to appellant; that after having finished the grade separation work there, it was ordered about July 3 to a cut south of Trowbridge farm, when an injunction was served on both appellee and appellant by those claiming easements in the right of way; that thereupon appellee informed appellant that the injunctions would shortly be dissolved and ordered it to keep its equipment and organization ready to proceed under the contract; that appellee advised appellant that it would be paid for any loss on account of the delay; that appellant did keep its equipment and men on the job ready to resume work when the injunctions should be dissolved, which was about July 28, 1928, and work was then resumed but was shortly thereafter again suspended by reason of other injunctions; that appellant kept its organization together, though reduced in force, and its equipment upon the job, appellee continuing to advise appellant that the later injunctions would shortly be dissolved and the work could be resumed and that appellant would be paid for all loss resulting from delay.

Appellant averred that about the time all the injunctions were finally dissolved in July, 1929, it contracted with appellee for extra work near the Yellow Cab plant and agreed to make no claim for delays thereafter occurring on the Woodward avenue project; that appellee then altered its plans to provide a four track railway instead of the double track one, necessitating much additional work; that appellant then reassembled its force and reconditioned its tracks, trestles, etc., at great loss and expense and resumed performance of the contract upon the assurance that it would be without prejudice to its right to collect for losses due to delay, except as modified by the Yellow Cab contract.

It was averred that all work was completed by August, 1931, and that appellee acknowledged complete performance and paid appellant on the express agreement that all losses suffered by it on account of the delays and injunctions were excepted from the settlement. It is unnecessary to particularize the many elements incorporated in appellant's alleged measure of damages.

The second count repeats certain averments of the first but is distinguished therefrom by the averments that after the injunctions of July 3, 1928, were served, causing a suspension of the work south of Trowbridge farm, appellant through its representative "discussed with the defendant the possibility of proceeding with the work under the contract and the defendant advised the Plaintiff that said injunctions would be dissolved within a very short time and ordered this plaintiff to keep its equipment, men," etc., ready for operation and *"then and there agreed with the plaintiff that it would pay any loss that the plaintiff might suffer on account of such delay and on account of the retention on the job of its equipment,"* etc. (italics ours), and in reliance thereon appellant did keep its equipment and men on the job and moved them to another point, commencing preliminary work in preparation for construction, when it was again served with an injunction on August 3, 1928, and was again compelled to suspend operations; that during all this time appellee from day to day and week to week continued to advise appellant that the injunction would shortly be dissolved and to order it to keep its men and equipment ready to resume performance; and to advise appellant that losses resulting from the delay would be paid to appellant by appellee. This averment of an oral agreement is substantially repeated in paragraph 14 of the second count.

The third count reiterates certain averments of the first but sets out in distinction that on or about June 1, 1928, appellee notified appellant that it had secured substantially all the right of way, knowing full well that it had not, even though it was physically in possession thereof, and that it did not have the right to construct its railway thereon for the reason that the right of way was burdened with certain reciprocal negative easements or restrictions preventing its use for railway purposes; that *appellee withheld fro the appellant the information that injunctions were pending, and willfully and wrongfully represented to appellant that it had the right of way, knowing that appellant would be enjoined from carrying on its work to appellant's great damage;* that appellant having no information as to the claims asserted by the owners and fully believing the statements and representations of appellee that it did have the right of way and that appellant could proceed expeditiously with performance prepared its equipment and brought it to the right of way at a cost of $25,000; that *relying on the representations, appellant started to work at Maple avenue,* bringing in and setting up its machinery and employing a large force of men and laying its plans for an expeditious performance of the contract in accordance with its terms and within its time limitations.

It was further averred that by reason of appellee's false and wrongful representations before the commencement of performance that it had substantially secured all the right of way upon which the work was to be done, appellant entered upon performance and when restrained by delays and injunctions sustained losses for which it claims damages. Paragraph 7 of the contract and certain provisions of the "General Conditions" forming a part of the contract are printed in the margin.[1]

Appellee moved the court (1) to make the state of Michigan a party defendant; and (2) to dismiss the cause as to appellee.

The state filed an answer to appellee's motion to make it a party and a separate motion to allow it to intervene for the sole purpose of making a motion to dismiss the cause. The District Court denied

---

[1] "7. It is understood that the right of way for the work herein contracted for is being acquired by the State of Michigan pursuant to a contract between the Company and the said State of Michigan dated July 20, 1927, and Act No. 340 of the Public Acts of 1927 of the State of Michigan, and the Contractor agrees, any statement or provision herein contained or contained in the General Conditions hereto annexed (whether expressed or implied) to the contrary notwithstanding, to enter in on any part of the line where the right of way has been acquired and proceed to the construction on that part without at any time making any claim against the Company or the State of Michigan for any delay that it may encounter through the failure or inability of the State to acquire any part, or all, of the necessary right of way."

Paragraph 3 concludes: "No verbal agreement or conversation with any officer, agent or employee of the Company, either before or after the execution of this contract, shall affect or modify any of the terms or obligations herein contained."

Paragraph 19 provides: "If the Contractor shall be delayed in the performance of the work by any cause for which the Company is responsible, he shall, upon written application to the Chief Engineer at the time of such delay, be granted such extension of time as the Chief Engineer shall deem equitable and just."

Paragraph 25 concludes: "Neither the Chief Engineer, nor any Inspector shall, under any circumstances, have power to waive any of the provisions of these conditions."

Paragraph 43 provides that: "No delay within or beyond the period herein specified for completing the work shall vitiate or void this contract or any part thereof, or the obligations hereby imposed upon the Contractor or make void or in any wise impair or affect any current or other bond of security for the performance of this contract, and all the covenants, agreements and conditions in this contract or in the specifications contained shall apply to the work until the said work is finally completed and accepted by the Chief Engineer, notwithstanding the fact that the work is not completed within the time specified herein for such completion."

Paragraph 51 states that: "It is distinctly declared that no implied contract of any kind whatsoever, by or on behalf of the Company, shall arise or be implied from anything in this contract contained or from any position or situation of the parties at any time, but that the express contracts, covenants and agreements herein contained and made by the Company are and shall be the only contracts, covenants and agreements upon which any right against the Company is to be founded."

the state's motions and the first part of appellee's motion, and inasmuch as this action was not appealed from it is not reviewable.

The District Court, however, granted the motion to dismiss the action; hence this appeal.

Under the law of Michigan the motion is the equivalent of a demurrer and viewing it in this light the action was correct as applicable to the first count of the declaration. Considering the first count as a suit upon the contract, it is bad because of the provisions of the agreement printed in the margin and particularly because of section 7. But, laying the contract aside, and viewing the first count as upon an independent agreement to pay for loss on account of delay due to the injunctions, it avers no more than a promise unsupported by any independent consideration.

We think the motion should have been overruled as to the second count. This count sets up an agreement to pay for loss caused by the injunctions in return for appellant's agreement to keep its equipment and working force on the job ready to recommence operations when the injunctions were finally dissolved. We think this is a fair and natural interpretation of the count, although it contains certain language from which dubious inference might arise that the pleader intended it as a count upon the contract. But a motion to dismiss a declaration for mere uncertainty of pleading is not good. The recognized procedure is a motion for a more specific statement. The averment varies the terms of the written contract but an oral contract may be substituted for a written one even though the written instrument provides that it shall not be modified by any verbal agreement. Teal v. Bilby, 123 U. S. 572, 578, 8 S. Ct. 239, 31 L. Ed. 263; Chesapeake & Ohio Canal Co. v. Ray, 101 U. S. 522, 527, 25 L. Ed. 792; Peck v. Stafford Flour Mills Co., 289 F. 43, 45 (C. C. A. 8). The real question presented by this count is one of fact, i. e., whether the oral agreement was substituted for the written one.

We think the third count should be construed as an action for fraud and deceit and that it is sufficient unless it discloses that appellant affirmed the contract by proceeding with its performance after full knowledge of the material facts. Although appellant finally and fully completed the contract, we do not think it can be said as a matter of law that it waived the alleged misrepresentations. The count fairly sets forth that appellant had no information touching adverse claims to the right of way and that it partially performed under the full belief that the statements and representations of appellee that it did have title to the right of way were true. To what extent the work had then proceeded, and whether or not appellant could have then abandoned it without serious loss does not appear, and we think therefore that the question of waiver was one of fact rather than of law. Sell v. Miss. River Logging Co., 88 Wis. 581, 586, 60 N. W. 1065; Grosgebauer et ux. v. Schneider et ux., 177 Wash. 43, 31 P.(2d) 90, 93; Multnomah County v. Standard Am. Dredging Co., 92 Or. 261, 267, 180 P. 508; Bean v. Bickley, 187 Iowa, 689, 710, 174 N. W. 675; Peck v. Brewer, 48 Ill. 54.

The following excerpt from Maryland Cas. Co. v. City of Cincinnati (D. C.) 291 F. 834, 835, is pertinent: "It is again urged by the city that the bill states no cause of action. The ground of this assertion is that it shows that while the work was under way Foley discovered the alleged falsity of the representations which had been made to him concerning the nature of the material to be excavated, and having so discovered, did not refuse to proceed further, but, on the contrary, made his election to proceed with the contract, and so waived his right of action for deceit. * * * Such an obligation to elect was asserted by counsel and denied by the Supreme Court upon a somewhat similar state of facts in United States v. Atlantic Dredging Co., 253 U. S. 1-11, 40 S. Ct. 423, 64 L. Ed. 735. It does not now appear, except for certain unexplained station numbers, how far the work had progressed toward completion when the discovery was made, or what the situation of the parties was at that time. If there was a waiver, as the city contends, it will be ascertainable when the facts are heard, and until that time final disposition of the question is passed. In view of the authority last referred to, it cannot be now held, on the allegations of the bill, that there was necessarily such a waiver."

Appellee relies upon paragraphs 35 and 38 of the contract in support of the order dismissing the action.

Paragraph 35 undertakes to allocate to appellee's chief engineer the settlement of

"* * * all questions, matters or disputes which may arise regarding any of the stipulations and provisions of these conditions or the true intent and meaning thereof or the manner of performance thereof or with respect to the proper interpretation and meaning of the plans and specifications or of this contract of which these conditions form a part shall be referred to the Chief Engineer who is hereby made, constituted and appointed sole arbitrator to decide all such questions, matters and disputes, etc."

Paragraph 38 provides: "The measurements and valuations appearing in the final certificate to be given by the Chief Engineer as in Clause 36 provided, shall be final and conclusive between the parties hereto and shall not be questioned by either party and in order to prevent disputes as to the construction of this contract or as to any question of law or fact or as to the measurements or valuations arising out of or incidental to the performance of this contract * * * shall in any and all such cases and as to any and all such matters be final and conclusive on both parties hereto * * * and actual fraud only shall disqualify him from acting as aforesaid, and each of the parties hereto will accept each and all such decisions and abide by the same as final and conclusive."

In support of its motion to dismiss, appellee submitted to the court an affidavit of one Clardy and a letter from the chief engineer to appellee purporting to determine under paragraphs 35 and 38 that appellant was not entitled to any damages by reason of paragraph 7 of the contract. Appellant urges that sections 35 and 38 are invalid because they oust the court of its jurisdictional functions and vest them in the chief engineer. If our view that appellant's causes of action as set out in counts 2 and 3 are not upon the written contract is correct, then paragraphs 35 and 38 are not relevant and the determination of the question of their validity is unimportant. In no event can we consider upon the motion to dismiss the affidavit of Clardy or the letter of the chief engineer. These documents present questions of fact rather than law.

The order dismissing the action is affirmed as to the first count of the declaration, but reversed as to the second and third counts, and the case is remanded.