FREEMAN ET AL., TRADING AS FREEMAN BROTHERS *v.* STANBERN CONSTRUCTION COMPANY

[No. 152, October Term, 1953.]

*Decided June 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John Henry Fallon* and *John B. Prebilich,* with whom was *William J. Millar,* on the brief, for appellants.

*Ralph W. Powers,* with whom was *George B. Gifford, Jr.,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Stanbern Construction Company was the general contractor for the construction of 270 apartments in Section A of Glassmanor, a project of the Federal Housing Administration located in Prince George's County at Congress Heights, a suburb of Washington. On May 25, 1949, Freeman Brothers, a partnership consisting of Walter B. Freeman, Sr., Walter B. Freeman, Jr., and George Freeman, entered into a contract with the general contractor to do all the landscaping in accordance with the architect's plans and specifications for the sum of $36,500.

Freeman Brothers, as such subcontractors, agreed that the selection of all materials and the execution of all work required by the plans and specifications should be subject to the approval of the F.H.A. landscape inspector, who would have the right to reject any articles, materials, supplies or workmanship which, in his opinion, did not conform to the specifications at any stage of the operations. They agreed that no planting would be done in frozen soil, or during unfavorable weather conditions, or after the month of April without the express permission of the F.H.A. landscape inspector. They agreed to guarantee all plant material to be true to name and size and to be in vigorous growing condition. They agreed that trees would be guaranteed for one year, and that evergreens and shrubs would be guaranteed through one growing season. They agreed to make any necessary replacements at the beginning of the first succeeding planting season.

According to Walter B. Freeman, Sr., defendants began clearing the top soil on May 26 and completed that preliminary work about July 15. In explaining why it took so long, he testified: "It couldn't all be done at once. The sub-grade wasn't ready. The job was late due to the fact that the excavating contractor was not

through with the grading around the buildings, and we had to wait for the buildings, going from building to building from time to time until the back-fill and grading had been completed."

Mr. Freeman explained the process of landscaping as follows: "There is a sequence in this work. You first get your grading done, your rough grading, then your fine grading. That wasn't up to me. The fine grading was done. Then you put your top soil on. You dig your shrubbery where excess top soil is required. Then the next step after that is you put your top soil in those pits and also everywhere that you are going to put grass or sod. Then, when that is done, you dig down through the sod that you already planted, and put in the required shrubbery for which you have a plan. That is the sequence."

Mr. Freeman testified that Herbert Glassman, the construction boss, ordered him to have all the planting completed by September 15, but he objected because shrubbery is practically never planted before September 15, and even then it is dependent upon the weather. "If it is dry," he said, "You wait for a rainy period. It might be October 15." When he objected, in view of the guarantee defendants had made that the shrubbery would be satisfactory through one growing season, Mr. Glassman held up payments for the work.

Mr. Freeman thereupon offered to show that defendants entered into an oral agreement whereby they agreed to plant the shrubbery without delay, and plaintiff agreed to waive the guarantee defendants had made as to the continued growth of the shrubbery, thus relieving them of liability for any unsatisfactory results from the planting. Mr. Freeman further testified that they began planting the shrubbery in the last week of August and completed it about September 13. He acknowledged that this was out of season, but he explained that it was impossible to plant earlier in the year on account of the failure of another subcontractor to complete the grading work on time, and that he did the planting in

August and early in September to comply with plaintiff's request to finish the work before the deadline of September 15.

During the course of the work, plaintiff paid defendants $35,882.20. Plaintiff then found that the planting did not meet the F.H.A. requirements, and the F.H.A. landscape inspector would not approve the work.

Plaintiff thereupon entered suit to recover damages from defendants for alleged breach of contract. Plaintiff alleged that, after unsuccessful efforts to persuade defendants to replace the rejected plant material and to complete the planting work, it replaced a number of plants itself in order to secure approval of the entire apartment project and a release of the balance of the F.H.A. insured construction loan.

The trial judge excluded testimony as to the alleged oral agreement varying the terms of the written contract, basing his ruling on the clause of the contract which provides: "No deviations from plans and specifications will be permitted without an agreement written by the General Contractor." At the conclusion of the trial the jury rendered a verdict in favor of plaintiff for $3,300.00. Defendants appealed from the judgment entered thereon.

Plaintiff filed a motion in this Court to dismiss the appeal on the ground that the transcript of the record was not transmitted to the Court of Appeals within 60 days from the time when the appeal was entered. The appeal was entered on December 10, 1953. Defendants submitted an affidavit of the Deputy Clerk of the Circuit Court for Prince George's County averring that on February 4, 1954, counsel for defendants submitted to her for filing a transcript of the testimony and the exhibits in the case, but those papers were not filed until February 8, because the bond presented by defendants did not conform with the requirements of the Circuit Court; that on February 8 a bond in proper form was presented to her and was filed on the same day, whereupon various papers which had been with-

held were filed. The Deputy Clerk further swore that she then prepared the record and mailed the transcript on February 10. It was filed in the office of the Clerk of the Court of Appeals on February 11.

Our rules provide that the transcript of the record in an appeal from a judgment of a court of law shall be transmitted within 60 days from the time of the appeal taken, but no appeal shall be dismissed because the transcript shall not have been transmitted within the time prescribed, if it shall appear to the Court of Appeals that such delay was occasioned by the neglect, omission or inability of the clerk or appellee. Rules Respecting Appeals, rules 2, 11. Inasmuch as defendants submitted the transcript of testimony and exhibits to the Deputy Clerk in ample time for transmission to the Clerk of the Court of Appeals, and the transcript was delayed several days by the mistake of the Deputy Clerk, we overruled plaintiff's motion to dismiss the appeal. The Deputy Clerk was under the impression that it was her duty to withhold the papers until the bond was filed, but actually the filing of a bond merely stays execution on the judgment and failure to file a bond does not affect the appeal and the right to have the papers transmitted.

It is an elementary rule of the common law that parol evidence is inadmissible to vary or contradict the terms of a written instrument. The reason for that rule, as we said in *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19, is that when contracting parties have discussed and agreed upon their obligations to each other and reduced them to writing, their written contract is more reliable as evidence than memory. All prior and contemporaneous negotiations are merged in the written instrument, which is treated as the exclusive medium for ascertaining the extent of the obligations. Hence, in the absence of duress, fraud, or mistake, parol evidence of conversations before or at the time of the execution of a contract must be excluded. Of course, the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms,

may be proved by parol, if under the circumstances of the case it may be properly inferred that the parties did not intend the written contract to be a complete and final statement of the whole transaction between them.

Inasmuch as a transaction made after a contract has been executed must always be a separate transaction, the general rule of exclusion can obviously not apply to it. Thus the law is settled in this State that when the parties to an executory written contract, not within the Statute of Frauds, discover that it does not correctly express their agreement, they may change the contract orally by mutual consent so as to make it conform with the actual agreement or with an agreement reached as a compromise of their differences. When such differences arise out of a contract, a compromise of their differences and the mutual agreement of the parties to vary the terms of the contract and to enter into a new agreement embodying the compromise constitute sufficient consideration to support the new agreement. *Hercules Powder Co. v. Harry T. Campbell Sons Co.*, 156 Md. 346, 362, 144 A. 510, 62 A. L. R. 1497.

It has been strenuously urged on this appeal that testimony as to the alleged oral agreement was properly excluded because of the provision in the written contract that no deviations from the plans and specifications would be permitted without the written agreement of the general contractor. We must reject that contention. The rule has been accepted by the Courts, both State and Federal, that, even though a written contract stipulates that it may not be varied except by an agreement in writing, nevertheless the parties, by a subsequent oral agreement, may modify it by mutual consent. *Zarthar v. Saliba*, 282 Mass. 558, 185 N. E. 367; *Blakeslee v. Board of Water Com'rs*, 121 Conn. 163, 183 A. 887, 895; *Headley v. Cavileer*, 82 N. J. L. 635, 82 A. 908; *Cramp & Co. v. Central Realty Corporation of Philadelphia*, 268 Pa. 14, 110 A. 763, 766; *Encyclopaedia Britanica, Inc., v. Cowan*, 142 Pa. Super. 534, 16 A. 2d 433; *Simpson v. Mann*. 71 W. Va. 516, 76 S. E. 895; *Illinois Central R.*

*Co. v. Manion,* 113 Ky. 7, 67 S. W. 40; *New York Life Insurance Co. v. O'Dom,* 100 Miss. 219, 56 So. 379, 382; *Sitkin v. Smith,* 35 Ariz. 226, 276 P. 521, 66 A. L. R. 645; *Kelly Springfield Tire Co. v. Faulkner,* 191 Wash. 549, 71 P. 2d 382; *Teer v. George A. Fuller Co.,* 4 Cir., 30 F. 2d 30; *H. W. Nelson Co. v. Grand Trunk Western R. Co.,* 6 Cir., 80 F. 2d 986, 990; *Grand Trunk Western R. Co. v. H. W. Nelson Co.,* 6 Cir., 116 F. 2d 823, 834; *Chesapeake & Ohio Canal Co. v. Ray,* 101 U. S. 522, 527, 25 L. Ed. 792.

It has been said that there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing, and that every such agreement is ended by the new one which contradicts it. This view was taken by the Court of Appeals of New York in *Beatty v. Guggenheim Exploration Co.,* 225 N. Y. 380, 122 N. E. 378, 381, wherein Judge Cardozo forcefully stated: "Those who make a contract may unmake it. The clause which forbids a change may be changed like any other. The prohibition of oral waiver may itself be waived. * * * What is excluded by one act is restored by another. * * * Whenever two men contract, no limitation self-imposed can destroy their power to contract again."

We hold that a subsequent oral modification of a written contract may be established by a preponderance of the evidence. *Achenbach v. Stoddard,* 253 Pa. 338, 98 A. 604; *United Steel Co. v. Casey,* 6 Cir., 262, F. 889, 891. Of course, if the written contract provides that it shall not be varied except by an agreement in writing, it must appear that the parties understood that this clause was waived. However, such a clause may be waived by implication as well as by express agreement. This rule was adopted in *Bartlett v. Stanchfield,* 148 Mass. 394, 19 N. E. 549, 550, where a contract for the building of a house stipulated that no charge should be made for extra work or materials unless the same should be ordered in writing and the price thereof agreed upon. The plaintiff offered to show that he had performed

work independent of the contract. The defendant objected to such testimony on the ground that the work and materials were not ordered in writing and that no price was agreed upon. The jury apparently found that the terms of the contract had been waived and that there had been a new oral agreement. It was argued on appeal before the Supreme Judicial Court of Massachusetts that there was no evidence of a waiver of the stipulation in the contract, but that Court held that the testimony that the owner had orally requested the contractor to perform extra work and had promised to pay for it and had also requested him to furnish extra materials was sufficient to justify the submission to the jury of the question of a waiver.

In support of that ruling, Justice Holmes, speaking for the Court, commented as follows: "The main argument for the defendant is that, if the work fell within the provisions of the contract, there was no evidence of a waiver. We are of opinion that there was evidence for the jury. Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and defendant, no doubt. But it cannot be assumed, as matter of law, that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way, and by any mode of expression, they saw fit. They could substitute a new oral contract by conduct and intimation, as well as by express words.

"In deciding whether they had waived the terms of the written contract, the jury had a right to assume that both parties remembered it, and knew its legal meaning. On that assumption, the question of waiver was a question as to what the plaintiff fairly might have understood to be the meaning of the defendant's conduct. If the plaintiff had a right to understand that the defendant expressed a consent to be liable, irrespective of the written contract, and furnished the work and ma-

terials on that understanding, the defendant is bound."

One of the cases upon which plaintiff relied was *Abbott v. Gatch,* 13 Md. 314, 331, 71 Am. Dec. 635, where a mechanic agreed to build a mill for a specified sum, and the contract contained a clause providing that no extra charges could be made except by written agreement attached to the contract. But the decision in that case is not in conflict with the law that has been generally adopted throughout the United States. On the contrary, the Court recognized that the clause could be waived. Judge Tuck said in the opinion in that case: "If persons voluntarily express themselves in writing, they must be bound by the language employed. * * * The law presumes, that they understand the import of their own contracts, and to have entered into them with knowledge of their mutual rights and obligations. And if * * * one party omits to have the changes reduced to writing, they must, in view of the rights of the other, be deemed to have been made with reference to the contract price, unless there be proof of an express waiver of that clause of the contract, or a promise to pay for the extra work."

Nor is *Merritt v. Peninsular Construction Co.,* 91 Md. 453, 46 A. 1013, cited by plaintiff, a precedent here. In that case a contract for the building of a railroad contained a provision that no claim for extra work would be allowed unless the work was done pursuant to a written order from the engineer. It is true that the Court held that the plaintiff could not testify as to an alleged oral agreement made with the defendant, but the proffer in that case was to vary the terms of the contract, not by a subsequent agreement, but by an agreement made prior to or contemporaneous with the contract.

Plaintiff made the further objection that the written contract in this case provided that the execution of all landscaping work would be subject to the approval of the F.H.A. landscape inspector, who would have the right to reject any articles, materials, supplies or workmanship which, in his opinion, did not conform to the specifications. That provision also could be waived like any

other. A comparable situation was presented in *Wood v. City of Fort Wayne*, 119 U. S. 312, 7 S. Ct. 219, 223, 30 L. Ed. 416, where the plaintiffs contracted to construct water works for the City of Fort Wayne, Indiana. In the contract was a clause providing that no claim could be made for extra work unless it was done pursuant to a written order of both the engineer and the trustees. The United States Supreme Court held that, notwithstanding that clause in the contract, the plaintiffs were entitled to collect from the municipality for extra work done in pursuance of a change of plan ordered by the defendant. Justice Blatchford, delivering the opinion of the Court, explained that decision as follows: "The clause providing that no claim for extra work shall be made or entertained, unless such extra work shall have been done in obedience to a written order of the engineer and trustees, is an independent clause from that which provides that the trustees shall have the right to make any alterations in the plan of the work, either before or after its commencement; and the extra work referred to in the former clause does not embrace work done in pursuance of an alteration made by the trustees in the plan. * * * The extra work referred to in the former clause required the authoritative written order of the engineer and trustees; but, as the trustees had the right to alter the plan, work done to carry out such alterations, when made by the trustees, was authorized by the trustees, in a manner equivalent to a written order by them and the engineer."

We conclude that the ruling of the trial judge excluding testimony as to the alleged oral agreement constituted reversible error. Therefore, we must reverse the judgment entered in favor of plaintiff and remand the case for a new trial.

*Judgment reversed and case remanded, with costs.*